**William Gordon BAILEY, Plaintiff,**

v.

**TURBINE DESIGN, INC., a Florida corporation, and Douglas K. Karlsen, individually, Defendants.**

**No. 99–1152.**

United States District Court,
W.D. Tennessee,
Eastern Division.

Feb. 7, 2000.

---

**2.** The Court specifically does not make any finding as to Defendant Marino's other arguments for dismissal.

E. Patrick Lancaster, Memphis, TN, Donald R. Andersen, John A. Howard, Atlanta, GA, Martin A. Pedata, St. Petersburg, FL, for plaintiff.

G. William Hymers, III, Jackson, TN, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

BREEN, United States Magistrate Judge.

Before the court by consent of the parties is the motion of defendants, Turbine Design, Inc. and Douglas K. Karlsen, to dismiss plaintiff's complaint, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, for lack of personal jurisdiction and failure to state a claim. The court has carefully considered the motion and response submitted by the parties, as well as the applicable law. For the following reasons, the motion to dismiss for lack of personal jurisdiction is GRANTED.

## FACTUAL BACKGROUND

Plaintiff William Gordon Bailey ("Bailey") is a resident of the state of Tennessee. He is one of four shareholders in Phoenix Corporation ("Phoenix"), a Mississippi corporation engaged in the business of aircraft conversions. Its principal facility for this business is located in Selmer, Tennessee. Defendant Turbine Design, Inc. ("TDI") is a Florida corporation engaged in the business of building, designing, and developing engine applications for various types of aircraft with its principal place of business at the Deland Airport in Deland, Florida. Defendant Douglas K. Karlsen, a Florida resident, is TDI's president. TDI is a competitor of Phoenix in the conversion of Beechcraft King Air aircraft. Both Phoenix and TDI hold Supplemental Type Certificates ("STCs") from the Federal Aviation Administration certifying them to install a certain type of engine, known as the Walter M602E–11, on Beechcraft King Air planes. In order to advertise its services, TDI developed an Internet web page located at *www.turbinedesign.com,* on which it describes the turbine installation kits and aircraft it builds for sale to its customers. The web site also contains information concerning technical problems associated with the Phoenix STC and the criminal history of Bailey. Phoenix is referred to at the site as a group of "con artists."

Plaintiff also alleged that, after Phoenix obtained its STC, the company's shareholders sold the stock of Phoenix to Mega Flight, Inc. ("Mega Flight"), a Florida corporation. In connection with the sale of stock, Phoenix and Mega Flight agreed that Mega Flight would purchase the Phoenix STC for $6 million. After the sale closed, Bailey averred that Mega Flight and the defendants conspired to misappropriate confidential and proprietary information developed by Phoenix and which was submitted to the FAA and used by Phoenix to obtain the STC. Bailey further alleged that Mega Flight and defendants

conspired to obtain an STC which permitted them to modify existing aircraft in competition with Phoenix and in order to avoid payment of the $6 million. Plaintiff charges that TDI and Karlsen interfered with Phoenix's contract with Mega Flight, resulting in Mega Flight's default thereunder. As part of the purported conspiracy, defendants, along with Mega Flight, also interfered with prospective business advantages and conversion/modification contracts between Phoenix and its customers. Based on these alleged activities, plaintiff has brought this action against defendants for libel, slander, tortious interference with contractual relations, conspiracy, interference with prospective business advantage, and invasion of privacy.

### DEFENDANTS' MOTION

■ The court will first address defendants' motion to dismiss this action on jurisdictional grounds. *See Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 40 (1st Cir.1991) (holding that, generally, courts should satisfy jurisdictional concerns prior to addressing the merits of an action). Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that dismissal is proper if there exists a "lack of jurisdiction over the person." Fed. R.Civ.P. 12(b)(2). The burden of establishing the existence of personal jurisdiction is borne by the party bringing the lawsuit. *International Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir.1997).

[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdic-

tion.... Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). In the absence of an evidentiary hearing, the court must view the evidence in the light most favorable to the plaintiff when deciding a Rule 12(b)(2) motion. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir.1996). The court is not to consider facts proffered by the defendant in conflict with those offered on behalf of the plaintiff. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 626 (6th Cir.1998). Thus, dismissal of the instant case is appropriate only if "all the specific facts which the plaintiff ... alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996).

■ In diversity cases, a federal court is to apply the law of the forum state in which it sits to determine whether personal jurisdiction is appropriate. The court may maintain jurisdiction over a non-resident defendant only in accordance with the forum state's long-arm statute and the limitations of the Due Process Clause of the Constitution. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.), *cert. denied*, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994); *Proctor & Gamble Cellulose Co. v. Viskoza–Loznica*, 33 F.Supp.2d 644, 660 (W.D.Tenn.1998).

■ The jurisdictional limits of the Tennessee long-arm statute, codified at Tennessee Code Annotated § 20–2–214,[1] have

---

1. Section 20–2–214 states in pertinent part as follows:

Persons who are not residents of Tennessee ... are subject to the jurisdiction of the courts of this state as to any action or claim for relief arising from:

(1) The transaction of any business within the state;

(2) Any tortious act or omission within this state;

(3) The ownership or possession of any interest in property located within the state;

(4) Entering into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within this state at the time of contracting;

(5) Entering into a contract for services to be rendered or for materials to be furnished in this state;

been interpreted as identical to those imposed by the Due Process Clause. *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir.1993). In such situations, the state long-arm statute and Due Process Clause "inquiries merge and the court 'need only determine whether the assertion of personal jurisdiction ... violates constitutional due process.'" *Aristech Chem. Int'l Ltd.*, 138 F.3d at 627 (quoting *Nationwide Mut. Ins. Co.*, 91 F.3d at 793) (alteration in original). Thus, as the only limitations placed on a Tennessee court's exercise of personal jurisdiction over the defendants in this case are those imposed by due process considerations, the court may confine its inquiry to whether the exercise of personal jurisdiction passes constitutional muster. *Id.*

■ Pursuant to the Constitution, personal jurisdiction over a defendant stems from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Reynolds*, 23 F.3d at 1116 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (alteration in original). Personal jurisdiction may be general or specific, depending on the type of minimum contacts present in the case. *Id.*

General jurisdiction exists when a defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims. Specific jurisdiction, in contrast, subjects the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum.

*Aristech Chem. Int'l Ltd.*, 138 F.3d at 627 (internal quotations and citations omitted). In cases such as this one, in which the plaintiff's cause of action relates to the defendants' contacts with the forum, the court exercises specific jurisdiction. *See Chrysler Corp. v. Uptown Motorcars-*

*Hartford, Inc.*, No. 98–1097, 1999 WL 196558, at *3 (6th Cir. Apr.1, 1999).

■ The Sixth Circuit has established three criteria to be used by a court in determining whether specific jurisdiction exists.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968); *see also Reynolds*, 23 F.3d at 1116. "The 'sine qua non' of personal jurisdiction is the purposeful availment factor ..." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir.1998). The "purposeful availment" element is satisfied

when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there."

*CompuServe, Inc.*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). The requirement prevents a defendant from being haled into a jurisdiction on the basis of "random," "fortuitous," or "attenuated" contacts. *Id.* A defendant's physical presence in the forum state is not required for the purposeful availment element to be satisfied. *Id.* at 1264.

Defendants allege that personal jurisdiction is lacking in this case because all of the work for TDI's STC and its prepara-

---

(6) Any basis not inconsistent with the constitution of this state or of the United States;

...

Tenn.Code Ann. § 20–2–214(a).

tion of the application therefor took place in Florida. Furthermore, TDI did not perform services required to complete the STC in, maintain an office in, or regularly solicit business in, Tennessee. Likewise, there is no evidence to suggest that the defendant Karlsen conducted any business activities which would provide a connection with Tennessee such as to establish jurisdiction over him in this state. Plaintiff does not disagree, but, rather, maintains that the relevant facts for purposes of determining whether personal jurisdiction exists involve the defendants' publication of allegedly defamatory statements on the Internet.

■ As the Sixth Circuit noted in *CompuServe*, "[t]he Internet represents perhaps the latest and greatest manifestation of [the] historical, globe-shrinking trends [of recent decades]. It enables anyone with the right equipment and knowledge ... to operate an international business cheaply, and from a desktop." *Id.* at 1262. Personal jurisdiction as it pertains to utilization of the Internet has created a relatively new issue for the federal courts. Some trends, however, have developed. In cases in which the contacts with the forum are based on a defendant's website, as is the case here, courts have looked closely at the level of interactivity occurring on the site in determining whether personal jurisdiction exists. *See* Jason H. Eaton, Annotation, *Effect of Use, or Alleged Use, of Internet on Personal Jurisdiction in, or Venue of, Federal Court Case,* 155 A.L.R.Fed. 535 (1999). Several courts have cited with approval the personal jurisdiction analysis of website cases, based on three general categories along a sliding scale, set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997), as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*See also Soma Med. Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1296–97 (10th Cir.1999) (adopting *Zippo* analysis); *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (same); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 417–19 (9th Cir.1997) (same); *Fix My PC, L.L.C. v. N.F.N. Assoc., Inc.,* 48 F.Supp.2d 640, 643 (N.D.Tex.1999) (same). While a general posting on the Internet is not sufficient to establish minimum contacts, courts may find personal jurisdiction appropriate where there is "something more" to indicate that the defendant purposefully directed his activities to the forum state. *See S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,* No. CIV. A. 99–2640, 1999 WL 1240949, at *3 (E.D.Pa. Dec.20, 1999); *Cybersell, Inc.,* 130 F.3d. at 418; *Fix My PC, L.L.C.,* 48 F.Supp.2d at 643.

The courts of this circuit are guided by the Sixth Circuit's decision in the seminal case of *CompuServe, Inc. v. Patterson.* In that decision, the defendant, a Texas resident, subscribed to CompuServe, a computer information service based in Ohio. *CompuServe, Inc.,* 89 F.3d at 1260. Plaintiff and defendant entered into a contract under which Patterson was permitted to place software he created on CompuServe's system for others to use and purchase. *Id.* Later, when the provider began

marketing its own software that was similar in purpose, markings, and name to that developed by Patterson, defendant demanded payment of some $100,000 to settle his potential trademark infringement claims. *Id.* at 1261. He repeatedly sent electronic and regular mail messages to plaintiff concerning his claims and posted a message on one of CompuServe's electronic forums setting forth his complaints against plaintiff for anyone who wished to peruse it. *Id.* at 1266.

In considering whether Patterson had purposefully availed himself of the privilege of doing business in Ohio, the court determined in this case of first impression that the defendant created a substantial connection with Ohio when he subscribed to CompuServe, entered into a contract with the Internet provider, and proceeded to send his software to and advertise that software on plaintiff's system for a period of some three years. *Id.* at 1264. Patterson made sales of his software from Texas through the CompuServe system in Ohio and received the proceeds of those sales through Ohio. *Id.* at 1266. Therefore, the defendant was "far more than a purchaser of services; he was a third-party provider of software who used CompuServe, which is located in Columbus[, Ohio], to market his wares in Ohio and elsewhere." *Id.* at 1264. The court noted that, while entering into a contract with an Ohio company or injecting a product into the stream of commerce in themselves would not be sufficient alone to establish the minimum contacts necessary for personal jurisdiction, taken together, the two factors were enough to survive an attack on personal jurisdiction. *Id.* at 1265.

In support of personal jurisdiction in this case, the plaintiff asserts that the alleged defamatory attacks from which this lawsuit arose were published on the Worldwide Web and that the acts were intended to cause injury within the forum state. Bailey avers that TDI's website displays the following link: "There is another STC for a King Air with Walter engines, ... it is controlled by some con artists in Tennessee. *Click here to do*

*some due diligence.*" (Pl. William Gordon Bailey's Resp. to Def.'s Mot. to Dismiss for Lack of Jurisdiction at 3.) When a user connects to the link, he sees a mug shot of plaintiff along with arrest records from 1991.

▉ Here, there is no indication whatsoever that TDI's website is anything other than wholly passive. The evidence reveals that the allegedly defamatory statements were merely posted on the website to be viewed by whomever cared to do so. There is no evidence that either TDI or Karlsen had any contacts with Tennessee other than the posting of the site which, it is assumed, is available to anyone anywhere with access to the Internet. Nor is there evidence to suggest that any effort was made to reach out to Tennessee residents any more than to persons residing elsewhere. Indeed, there is no indication that any Tennessee resident, except for Bailey, ever visited the website. Accordingly, the court finds that the plaintiff has failed to show that defendants purposefully availed themselves of the benefits of the state of Tennessee. *See Soma Med. Int'l,* 196 F.3d at 1299 (maintenance of passive website did not constitute purposeful availment of benefits of forum so that defendant could expect to be haled into court there); *Mink,* 190 F.3d at 336–37 (same); *Cybersell, Inc.,* 130 F.3d at 418 ("Creating a site, like placing a product into the stream of commerce, may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state"); *Loudon Plastics, Inc. v. Brenner Tool & Die, Inc.,* 74 F.Supp.2d 182, 185–86 (N.D.N.Y.1999) (accessibility to non-interactive passive website was not sufficient to invoke personal jurisdiction absent other contacts); *Brown v. Geha–Werke GmbH,* 69 F.Supp.2d 770, 778 (D.S.C.1999) (burden of proof not carried where plaintiff failed to show that defendant engaged in additional conduct other than placing product in stream of commerce via passive website); *Broussard v. Deauville Hotel Resorts, Inc.,* No. CIV.

A. 98–3157, 1999 WL 621527, at *2 (E.D.La. Aug.13, 1999) ("Creating a website may be felt nation-wide or even world-wide, but without more, it is not an act purposefully directed toward the forum"). To find that personal jurisdiction exists on the facts in this case would be to subscribe to the notion that anyone who posted information on the Internet is subject to nationwide jurisdiction, a leap this court is not prepared to make. *See Barrett v. Catacombs Press,* 44 F.Supp.2d 717, 727 (E.D.Pa.1999). Moreover, the mere fact that the website contained defamatory information concerning the plaintiff does not, absent some supporting evidence, mean that the defendant possessed the intent to target residents of the forum state. *See id.* (holding that the fact that defendant's website included defamatory information regarding the plaintiff and that such information was accessible worldwide does not mean that defendant had the intent of targeting forum residents with such information); *see also Mallinckrodt Med., Inc. v. Sonus Pharmaceuticals, Inc.,* 989 F.Supp. 265, 273 (D.D.C.1998) (even if plaintiff suffered injury from alleged defamation in the forum, personal jurisdiction was lacking without additional contacts). As the court has determined that the plaintiff has failed to carry his burden of proof as to the first element of the personal jurisdiction analysis, the court need not consider whether he has done so as to the remaining requirements.

In support of his opposition to defendants' motion to dismiss, plaintiff cites *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), in which the Supreme Court developed the "effects test," that focuses on the extent to which a defendant's tortious conduct is directed toward or has an effect in the forum state for purposes of establishing personal jurisdiction. The Court found personal jurisdiction appropriate in *Calder* because the defendants knew that the article, written about actress Shirley Jones, would have a devastating effect on Jones and that the brunt of the injury would be felt by her in the state where she lived and worked and in which the National Enquirer had its largest circulation. *Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1487. The court exercised jurisdiction based on its conclusion that the defendants' intentional and allegedly tortious acts were expressly aimed at California. *Id.*

The effects test articulated by the Court in *Calder* has been applied to Internet cases. In *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998), the Ninth Circuit found personal jurisdiction existed in a case in which the defendant allegedly registered Panavision's trademarks as his Internet website domain name in order to extort money from Panavision. The court held that, based on *Calder,* the brunt of the harm was felt in California and that Toeppen knew Panavision would suffer harm there because its principal place of business was in the forum state and "the heart of the theatrical motion picture and television industry is located there." *Id.*

*Panavision* is distinguishable from this case, however. Here, the defendants attacked the plaintiff in their website as a business competitor who Bailey has conceded "solicit[s] conversions nationwide and worldwide." Plaintiff was not attacked as a Tennessee businessman. Indeed, the alleged defamatory comments had nothing to do with plaintiff's state of residence. Thus, it cannot be said that the defamatory statements constitute actions "expressly aimed" at Tennessee. As the court stated in *Barrett,* another Internet defamation action,

> It is certainly foreseeable that some of the harm would be felt in [the forum state] because Plaintiff lives and works there, but such foreseeability is not sufficient for an assertion of jurisdiction. While we agree that [forum] residents are among the recipients or viewers of such defamatory statements, they are but a fraction of other worldwide Internet users who have received or viewed such statements. The mere allegations that the Plaintiff feels the effect of the

Defendant's tortious conduct in the forum because the Plaintiff is located there is insufficient to satisfy *Calder*. Unless [the forum state] is deliberately or knowingly targeted by the tortfeasor, the fact that harm is felt in [the forum state] from conduct occurring outside [it] is never sufficient to satisfy due process.

*Barrett,* 44 F.Supp.2d at 731 (internal citations, footnotes, and quotations omitted); *see also* Reynolds, 23 F.3d at 1120 (finding, in distinguishing *Calder,* that "[t]he fact that the [defendant] could foresee that the [statements] would be circulated and have an effect in [the forum state] is not, in itself, enough to create personal jurisdiction"); *Neogen Corp. v. Vicam,* No. 5:96-CV-138, 1997 WL 481021, at *5-7 (W.D.Mich. Feb.20, 1997) (no personal jurisdiction in defamation case where the only connection to the forum state is the defendant's knowledge of plaintiff's residence). Therefore, the court will not exercise jurisdiction over the defendants based on the fact that some of the harm caused by the alleged tortious conduct occurred in Tennessee. *See Barrett,* 44 F.Supp.2d at 731.

## CONCLUSION

In conclusion, the court finds that plaintiff has failed to satisfy his burden of proof that personal jurisdiction over defendants exists in this case. Thus, the defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. As a consequence, the court need not address defendants' motion to dismiss for failure to state a claim.