James M. LOFTON, Plaintiff,

v.

TURBINE DESIGN, INC., a Florida corporation, Douglas Karlsen, individually Defendants

Robert E. Lamb, Plaintiff,

v.

Turbine Design, Inc., et al., Defendants,

Phoenix Corporation, Plaintiff,

v.

Turbine Design, Inc., et al., Defendants,

Dr. Robert C. Lee, Plaintiff.

v.

Turbine Design, Inc., et al., Defendants.

Nos. CIV.A.3:99CV084–B–A, 3:99CV085–B–A, 3:99CV086–B–A, 2:99CV213–B–A.

United States District Court,
N.D. Mississippi,
Western Division.

March 29, 2000.

Thomas A. Wicker, Holland, Ray & Up-church, Tupelo, Martin A. Pedata, Martin A. Pedata, Attorney, St. Petersburg, FL, for Turbine Design, Inc., a Florida Corporation, Douglas K. Karlsen, Individually, defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

These causes come before the court upon the defendants' motions to dismiss and supplemental motions to dismiss. Upon due consideration of the parties' memoranda and responses thereto, the court is ready to rule.

### FACTS

The plaintiffs, Lofton, Lamb and Lee, are three of the four original shareholders of Phoenix Corporation, a Mississippi corporation, which is primarily in the business of converting aircraft according to various engine applications.[1] Phoenix also designs and develops said applications. Phoenix has its registered office at the airport in New Albany, Mississippi, and its principal aircraft conversion facility in Selmer, Tennessee. The defendant, Turbine Design, Inc.,[2] is a Florida corporation which is a competitor of the plaintiffs in the business of design and development of engine applications for aircraft and the conversion of those aircraft. TDI's principal place of business is the airport in Deland, Florida. The defendant, Mr. Douglas Karlsen, is the president of TDI and is also a resident of the State of Florida.[3]

Both the plaintiffs and the defendants have designed and built an engine application for conversion of a Beechcraft King Air aircraft using a Walter M601–E11 engine instead of the Pratt & Witney engine used in this type aircraft. Both TDI and

Robert Taylor Witthauer, Petkoff & Lancaster, Memphis, TN, Donald R. Andersen, John A. Howard, Meredith Hudmon Ragains, Smith Howard & AJAX, Atlanta, GA, for Robert C. Lee, Dr., plaintiffs.

1. All Plaintiffs, Lofton, Lamb, Lee and Phoenix Corporation, shall herein be referred to as "plaintiffs" collectively unless otherwise specifically named.

2. Turbine Design, Inc., shall herein be referred to as "TDI".

3. Both defendants, TDI and Karlsen, shall herein be referred to as "defendants" collectively unless otherwise specifically named.

Phoenix hold Supplemental Type Certificates, commonly referred to as an "STC," for this type of conversion.[4] The plaintiffs obtained their STC on May 16, 1997, and amended STC on May 27, 1997, for various models of the Beechcraft King Air aircraft. Soon thereafter, the plaintiffs received three contracts for the installation of the Walter engines on Beechcraft King Air series planes. Subsequently, the Phoenix shareholders sold their stock in Phoenix Corporation to Mega Flight, Inc., a Florida corporation, pursuant to a stock purchase agreement and a stock pledge agreement. These agreements allowed the original shareholders to retain a security interest in the stock of Phoenix in order to secure Mega Flight's performance under the contract. Although the specifics are unclear, it is evident that there were disagreements between the shareholders of Phoenix and Mega Flight and, ultimately, the stock of Phoenix was returned, by court order, to its original shareholders. However, the plaintiffs claim that proprietary information used in obtaining Phoenix's STC was misappropriated by Mega Flight's disclosure of that information to TDI. Further, the plaintiffs allege that TDI then used Phoenix's proprietary and confidential information in order to aid in development of its own STC. The plaintiffs have also alleged that in order to prevent Phoenix from effectively marketing its conversion, which was at or about the time TDI was attempting to obtain its STC from the Federal Aviation Administration, TDI began disparaging the Phoenix STC through defamatory statements published on the World Wide Web at TDI's website.[5] TDI states that its website is for advertising purposes only, yet it is undisputed that TDI posted, via their website, information regarding alleged technical difficulties of the Phoenix Corporation STC as well as the criminal history and mug shot of a Mr.

Gordon Bailey, one of the shareholders of Phoenix Corporation (who is not a party to these actions).

As a result, the plaintiffs filed the above referenced actions alleging defamation, libel and slander, tortious interference with contractual relations, conspiracy and interference with prospective business advantage, invasion of privacy, and that the actions of the defendants place the plaintiffs in a false light. These actions were consolidated by order of the magistrate judge on October 28, 1998. The defendants have filed motions to dismiss pursuant to the Federal Rules of Civil Procedure, Rules 12(b)(2) and 12(b)(6), as well as a supplemental motion to dismiss primarily bolstering their Rule 12(b)(2) arguments. These motions are presently before the court; as they are all virtually identical, the court will address them collectively.

## LAW

■ A nonresident defendant shall be subject to personal jurisdiction in a federal diversity suit to the extent permitted by the laws of the forum state and the considerations of constitutional due process. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990). When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the Court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994) *cert. denied* 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). The extent of federal jurisdiction over a nonresident defendant is determined by a two-step inquiry: 1)the defendant must be amenable to service of process under the forum state's jurisdictional long-arm statute, and 2) the exercise of jurisdiction under the state statute must comport with the dictates of the due process clause of the Fourteenth Amendment.

---

4. A Supplemental Type Certificate, or STC, is a certificate issued by the FAA as a result of a review of a proposed aircraft modification to determine whether the modification meets all applicable FAA regulations.

5. TDI's website may be found at *www.turbinedesign.com*.

*See Omni Capital Int'l. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–05, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987). Once personal jurisdiction has been challenged, plaintiffs bear the burden of establishing this court's jurisdiction over nonresident defendants. However, plaintiffs need not make a full showing on the merits that jurisdiction is proper but must make a prima facie showing of the facts upon which in personam jurisdiction is predicated to avoid dismissal for lack of jurisdiction. In this regard, "the allegations of the complaint, except as controverted by the defendant's affidavits, must be taken as true." *Strong v. RG Indus., Inc.*, 691 F.Supp. 1017, 1018 (S.D.Miss.1988)(internal citations omitted).

### A. MISSISSIPPI'S LONG–ARM STATUTE:

■ In construing the law of the forum state, the Court looks first to Mississippi's long arm statute, found at Section 13–3–57 of the Mississippi Code, which provides in pertinent part:

> Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13–3–57 (Supp.1993). The Mississippi Supreme Court has construed section 13–3–57 as applicable to three types of nonresident defendants: (1) nonresidents who make a contract with a Mississippi resident to be performed in whole or in part within the state; (2) non-

residents who commit a tort in whole or in part within the state against a resident or nonresident; and (3) nonresidents who are "doing business" within the state. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1167–68 n. 5 (*citing, Smith v. Temco, Inc.*, 252 So.2d 212, 214–16 (Miss.1971)). The reach of Mississippi's long-arm statute is broad. It allows Mississippi courts to exercise jurisdiction over nonresident defendants whose conduct within the state has caused an alleged injury, and over nonresident defendants who have availed themselves to the protection of the laws of the State of Mississippi. The long-arm statute requires the satisfaction of at least one of its conditions before it may be utilized. Therefore, to establish personal jurisdiction over the defendant, the plaintiffs must establish jurisdiction under either the "contract," "tort," or the "doing business" prong of the long arm statute. *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir.1989). The plaintiffs claim that the defendants fall under the tort prong of the Mississippi long-arm statute.

### *TORT PRONG*

■ In their complaint, the plaintiffs have alleged numerous torts; however, their argument for personal jurisdiction over the defendants centers mainly on the torts of defamation, libel and slander. Section 13–3–57 provides that a nonresident defendant will be subjected to the jurisdiction of the court if it "commit[s] a tort in whole or in part in this state against a resident or nonresident of this state." In construing the tort prong of Mississippi's long arm statute, the Mississippi Supreme Court has held that personal jurisdiction over a nonresident defendant who allegedly committed a tort is proper if any of the elements of the tort— or any part of an element—takes place in Mississippi. *Smith v. Temco*, 252 So.2d 212, 216 (Miss.1971). A tort is not complete until injury occurs and if the injury occurs in the state, then the tort is committed, at least in part, in this state, and

the exercise of in personam jurisdiction of the nonresident tortfeasor is appropriate. *Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir.1997); *Mize v. Harvey Shapiro Enters., Inc.,* 714 F.Supp. 220, 222–23 (N.D.Miss.1989). Since injury is necessarily required to complete a tort, a tort is considered to have been committed in part in Mississippi where the injury results in the state. *Rippy v. Crescent Feed Commodities, Inc.,* 710 F.Supp. 1074, 1077 (S.D.Miss.1988) (*citing Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1168 (5th Cir.1985)); *See also, Edwards v. Associated Press,* 512 F.2d 258, 264 (5th Cir.1975). The plaintiffs have effectively argued that the torts of libel and slander are not complete until publication, and upon publication in Mississippi, the tort is complete and would satisfy the requirements of the Mississippi long-arm statute. *See Edwards,* 512 F.2d at 267. The plaintiffs allege, with evidentiary support, that the Defendants committed the torts of defamation, libel and slander, at least in part, through their activities in Mississippi. These activities include publishing the alleged defamatory information complained of on the Internet via TDI's website, allowing access and publication within the State of Mississippi and among Mississippi residents. This is sufficient to establish a prima facie case of personal jurisdiction under the "tort" prong of Mississippi's long-arm statute. *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir.1989); *Mize,* 714 F.Supp. at 223. Accordingly, pursuant to Mississippi's long-arm statute, this court's exercise of personal jurisdiction is appropriate.

### B. CONSTITUTIONAL ANALYSIS

Once the court determines that the state law prong of the jurisdictional analysis is satisfied, the issue of personal jurisdiction is not automatically resolved. We must now determine whether subjecting the defendants to in personam jurisdiction in Mississippi is constitutionally permissible. It is necessary for the plaintiffs to demonstrate that the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. The court must find that the nonresident defendants have (1) purposefully established "minimum contacts" with the forum state and, if so, (2) that entertainment of the suit against the nonresident would not offend "traditional notions of fair play and substantial justice." *Bullion v. Gillespie,* 895 F.2d 213, 216 (5th Cir.1990)(*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### MINIMUM CONTACTS

The court first addresses the minimum contacts requirement. A defendant has the requisite minimum contacts with a state when "it purposely avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). At this stage of the analysis, the focus is upon the nature of the underlying litigation. *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1361 (5th Cir.1990). Minimum contacts with the forum state may arise incident to the federal court's "general" or "specific" jurisdiction over the nonresident defendant. The court may exercise specific jurisdiction when the suit "arises out of or is related to" the defendant's contacts with the forum. *Petroleum Helicopters, Inc. v. Avco Corp.,* 804 F.2d 1367, 1370 (5th Cir.1986). General jurisdiction involves a suit which does not arise from the nonresident defendant's contacts with the forum state and can be asserted only over nonresident defendants who maintain "continuous and systematic contacts" with the forum state. *Interfirst Bank Clifton v. Fernandez,* 844 F.2d 279, 283 (5th Cir.1988)(*citing Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984)). The court finds that the defendants have not established any contacts directly related to the cause of action required for specific jurisdiction; thus, we

must examine the question of whether general jurisdiction has been established.

■ The instant case involves the question of whether or not a party's Internet website can be a basis for personal jurisdiction. This is a new but burgeoning area of law. Presently, there is a dearth of case law on the topic. While this topic has not been addressed by this court or by the state courts of Mississippi, the Fifth Circuit has recently provided some guidance in this area with its decision in *Mink v. AAAA Development, LLC.*, 190 F.3d 333 (5th Cir.1999). In *Mink*, the Fifth Circuit adopted the case of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997), and followed its analysis, stating:

> The *Zippo* decision categorized Internet use into a spectrum of three areas. At the one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet...." *Zippo*, 952 F.Supp. at 1124. In this situation, personal jurisdiction is proper. See *Id.* (*citing CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. See *Id.* (*citing Bensusan Restaurant Corp., v. King*, 937 F.Supp. 295 (S.D.N.Y.1996), aff'd, 126 F.3d 25 (2d Cir.1997)). In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." *Id.* (*citing Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996)).

*Mink*, at 336. In the instant cause, the defendants' website is used solely as an advertising tool. The site may be accessed via the Internet by individuals interested in aircraft conversion. The site displays the defendants' business and products as well as information about its services. While it is true that it did contain information regarding the plaintiffs, the primary purpose of the website is for advertising. The website does not contain a price list for services, contract for engagement of services, or order form. It is not suited for shopping or ordering online. It does not even offer the opportunity to receive a quote as to costs of potential services via the site, it merely offers pictures and information regarding the defendants' business and information for accessing the defendants.[6] Analyzing these facts according to the sliding scale or spectrum promulgated by the *Zippo* court and adopted by the Fifth circuit in *Mink*, the defendants' website is a purely passive site.

The plaintiffs persuasively argue that the defendants purposefully directed the alleged defamatory material published on their website toward Mississippi residents and a Mississippi corporation intending to harm their business activities and reputations. *See* Plaintiff's respective Responses to Defendants' Motion to Dismiss for Lack of Jurisdiction, p. 4. Pointing to the "effects test" articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), and the cyberlaw cases that have stemmed therefrom, the plaintiffs contend that personal jurisdiction should be conferred on a nonresident defendant where the defendants knew or should have known that their actions would cause injury in the

---

**6.** The evidence presented to the court references the fact that the website does contain the phone number, address, and e-mail address to contact the defendants. However, the court notes that the Fifth Circuit has specifically held that this alone is insufficient to establish personal jurisdiction over a nonresident defendant. *Mink*, at 337.

forum state. In *Calder*, the plaintiff sued the *National Enquirer, Inc.,* its reporter, and its president/editor in federal court in California, even though the *Enquirer* was a Florida corporation and the reporter, and president/editor were Florida residents. *Calder*, 465 U.S. at 785–86, 104 S.Ct. 1482, 79 L.Ed.2d 804. The effects test, applied by the Supreme Court in *Calder*, provides that jurisdiction may be proper where the effects of a defendant's conduct in one state may cause injury in the forum state, despite the actual physical contacts or other contacts within the forum state. *See Calder v. Jones*, 465 U.S. at 789, 104 S.Ct. at 1486–87. The *Calder* court found that the actions of the defendants were "expressly aimed at California" and were "calculated to cause injury to the respondent in California." *Calder*, 465 U.S. at 789, 790, 104 S.Ct. at 1482. Further, the *Enquirer* actually circulated more copies of its newspaper in California than in any other state. *Id.* The plaintiffs correctly argue that it is not a prerequisite to personal jurisdiction that the nonresident defendant physically enter the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174 85 L.Ed.2d 528 (1985). However, unlike *Calder*, the forum state in this matter, Mississippi, is not the focal point nor necessarily the locale of the alleged harm suffered. The information posted was focused on a Tennessee resident, Gordon Bailey, who, although a Phoenix shareholder, is not a plaintiff in this action. Further, the defendants in *Calder*, had some contacts within the forum state—it circulated some 600,000 copies of the *Enquirer* within California. *Calder*, at 790, 104 S.Ct. 1482. In the instant case, there is no evidence of any contact at all between the defendants and the forum state, absent the Internet. Additionally, there is no evidence that TDI's site was accessed by Mississippi residents other than the plaintiffs. However compelling the plaintiffs' argument, following that rationale, it would then be appropriate to find the existence of personal jurisdiction of a nonresident defendant based solely upon the postings on his website, which is simply accessible by Mississippi residents. This is a minority view and it is not the application of the law within this circuit. *See Mink*, at 337; *Origin Instruments Corp. v. Adaptive Computer Systems, Inc.*, 1999 U.S. Dist. LEXIS 1451, *6, 1999 WL 76794 (N.D. Texas 1999); *Bush v. Tidewater Marine Alaska, Inc.*, 1998 U.S. Dist. LEXIS 13588, 1998 WL 560048 (E.D.Tex.1998); *Mieczkowski v. Masco Corp.*, 997 F.Supp. 782 (E.D.Tex. 1998); *Schnapp v. McBride*, 64 F.Supp.2d 608, *See also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996). "Generally speaking, a 'sliding scale' approach is used when determining Internet jurisdictional issues," and this scale is the proper approach to be used by this court. *Schnapp*, at 611.

The facts in this case establish that the defendants do not have an office within the State of Mississippi, they do not have Mississippi employees or sales representatives, do not solicit business in Mississippi, and do not derive any income from Mississippi customers. *See* Affidavit of Douglas Karlsen, dated August 9, 1999; Defendants' Amended Memorandum of Law in Support of Defendants' Motion to Dismiss. Personal jurisdiction is not proper simply based upon the mere possibility that a nonresident defendant has the capability to do business with a resident of Mississippi. *Origin Instruments Corp.*, 1999 U.S. Dist. LEXIS 1451, at *11, 1999 WL 76794. Finding that TDI's website is a passive site according to the *Zippo* and *Mink* analysis, the court holds that personal jurisdiction over the defendants is not appropriate in this case, and the defendants' motions to dismiss pursuant to Rule 12(b)(2) should be granted.

The decision of the court precludes the need for any further constitutional analysis under *International Shoe*, and its progeny. As well, the court declines to examine the merits of the defendants' motions to dis-

miss under Rule 12(b)(6), and will deny the same as moot.