MEDINAH MINING, INC., (n/k/a Medinah Minerals, Inc.), a Nevada corporation; Les Price, an individual, Plaintiffs,

v.

Christian AMUNATEGUI, Frank Cerney, John Melnyk, Jerry Segal, Frank Paletta, Shelly Paletta, James Ingram, J.B. Steele, Michael Craig (Elson), and Does 1–50, individuals; and Black Corporations 1–25, entities, Defendants.

No. CV–N–00–0163ECR(VPC).

United States District Court,
D. Nevada.

Nov. 5, 2002.

Medinah Mining, Inc., North Vancouver, pro se.

Les Price, North Vancouver, pro se.

Frank W. Cerney, British Columbia, pro se.

N. Patrick Flanagan, Hale, Lane, Peek, Dennison, Howard & Anderson, Reno, NV, for James Ingram, Ty Smith.

Devon T. Reese, Laxalt & Nomura, Ltd., Reno, NV, for Bruce Neuman.

Jerry Segal, British Columbia, pro se.

### ORDER

EDWARD C. REED, JR., District Judge.

We now consider defendant James Ingram's ("Ingram") motion to dismiss (# 87) for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiffs Medinah Mining, Inc. ("Medinah") and Les Price (collectively "Plaintiffs") filed an opposition (# 97) and Ingram replied (# 100).

### Background

Plaintiffs filed the present action against sixteen defendants, alleging that they defamed Medinah and Price over the Internet. In addition to defamation, Plaintiffs assert ten related claims. The allegations are factually sparse. Each defendant is alleged to be an "Internet basher" in that each used the Internet to malign and slander Plaintiffs. The complaint alleges that the defamatory Internet communications related to the integrity and business ethics of Plaintiffs and were communicated to all users of the Internet throughout the world.

Ingram is one of the defendants who allegedly posted false and defamatory statements about Medinah and its officers on the Internet. Through affidavits and other evidence, Plaintiffs submit that Ingram posted 1932 false and defamatory statements on a website maintained by Terra Lycos, *www.ragingbull.com,* between March 1999 and February 2002, under the moniker "Lucky 2505." The Raging Bull website is an interactive site that reports financial news and maintains information on publicly traded companies. Anyone may access the website, read its content, and post information regarding publically traded companies.

It is undisputed that Ingram is a resident of Arkansas. He has never been to Nevada, done business in Nevada, nor does he own any property in Nevada. It is also undisputed that Price is a resident and citizen of Canada; that Medinah is a publically traded company whose headquarters are in California; that its operations are in Chile; and that Medinah is incorporated in Nevada. It has 25 shareholders residing in Nevada and has its annual shareholders' meeting in Nevada.

### Standard

As it does not appear that an evidentiary hearing will be helpful to the court in making its decision, we decide the issue of personal jurisdiction based upon an examination of the written materials submitted by the parties. We note that we consider both the parties' pleadings as well as affidavits and discovery material submitted when reviewing a motion to dismiss for lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2). As such, Plaintiffs must only demonstrate a prima facie showing of jurisdiction through its pleadings and affidavits to withstand the motion to dismiss. *Glencore Grain Rotterdam B.V., v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir.2002). We accept as true a plaintiff's uncontroverted allegations and resolve in its favor factual conflicts contained in the parties' filings. *Id.* at 1119.

### Analysis

### I. Personal Jurisdiction

An analysis of personal jurisdiction has two components. First, there must be a statute that gives the court authority to exercise jurisdiction. *Data Disc Inc. v. Systems Tech. Assoc. Inc.*, 557 F.2d 1280 (9th Cir.1977). Second, the exercise of jurisdiction must meet Constitutional standards. *Id.* This court, sitting in diversity, is bound to follow the Nevada Supreme Court's interpretation of Nevada state law. *Abraham v. Agusta, S.P.A.*, 968 F.Supp. 1403, 1407 (D.Nev.1997). The Nevada Supreme Court has interpreted NRS 14.065.1 to allow exercise of personal jurisdiction to the extent permitted by the United States Constitution. *Id.* However, whether the exercise of jurisdiction comports with the 14th Amendment's due process requirements is a question of federal law. *Data Disc*, 557 F.2d at 1286–87 n. 3. A court may have personal jurisdiction over a defendant in one of two ways: general or specific. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir.1995).

### A. General Jurisdiction

If the defendant's activities and contacts with the forum state are substantial, continuous, or systematic, a court will have general jurisdiction over the defendant. *Id.* Because Plaintiffs do not argue that general jurisdiction exists, we proceed to the parties' arguments concerning specific jurisdiction.

### B. Specific Jurisdiction

Specific jurisdiction may be established if the defendant has such "minimum contacts" with the forum state such that he can reasonably anticipate being haled into court there. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A forum state's exercise of jurisdiction must not offend traditional notions of fair play and substantial justice. *Reebok*, 49 F.3d at 1391 (citations and internal quotation marks omitted). Specific jurisdiction is established by an analysis of the "quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)(*citing Data Disc*, 557 F.2d at 1287).

The Ninth Circuit uses a three part test to determine if personal jurisdiction exists: (1) the defendant must perform some act or consummate some transaction within the forum or otherwise purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082 (9th Cir.2000) (citations omitted).

#### 1. Purposeful Availment In Internet Cases

In order to establish the first element of this test, which is essential to finding juris-

diction, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Because the parties' main dispute is whether Ingram's alleged posting of defamatory statements on a website is sufficient to meet this first prong, we focus our attention on this issue.

The law governing the propriety of exercising personal jurisdiction over a defendant for alleged conduct that occurs over the Internet is relatively new. Although the principles governing the issue are still evolving, there is a sufficient body of law that guides us through the situation we presently face.

■ Plaintiffs argue that evidence that Ingram posted allegedly defamatory information on the Internet, which was accessible to residents of Nevada, is enough to show purposeful availment. Plaintiffs rely on *TELCO Communications v. An Apple A Day*, 977 F.Supp. 404 (E.D.Va.1997) as support for this proposition. As Ingram points out, the Ninth Circuit as well as the majority of jurisdictions, have rejected the holding that merely posting information on an otherwise passive website is sufficient. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997)(finding "something more" is required than merely posting information on a website); *see also Vinten v. Jeantot Marine Alliances, S.A.*, 191 F.Supp.2d 642, 647 n. 10 (D.S.C.2002)(the majority of courts have rejected the conclusion of *TELCO* that the mere presence of a website is enough to subject the defendant to personal jurisdiction in the forum where the website could be accessed).

■ Instead, the Ninth Circuit has adopted the analysis announced in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997), to judge whether a defendant can be held amenable to jurisdiction in a foreign state for contacts that occurred over the Internet. The *Zippo* court announced a sliding scale rule, which focuses on the level of interactivity a defendant employs through its website in doing business with a forum to determine whether the exercise of personal jurisdiction is appropriate. The Ninth Circuit adopted this rationale in *Cybersell*, stating the "likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and the quality of commercial activity that an entity conducts over the Internet." *Id.* at 419 (citations omitted).

Therefore, when the defendant is charged with posting information on a passive website, that is, a website where information is simply made available to those interested in accessing it, the exercise of jurisdiction is not proper. *Zippo*, 952 F.Supp. at 1124. This reasoning is echoed in *Cybersell*, where the court found that a defendant who merely operates a website that can be accessed from anywhere cannot, without more, be said to be deliberately directing its merchandising towards one forum. *Cybersell*, 130 F.3d at 419.

■ We do not think there is a question or a dispute that the website, www.ragingbull.com, is passive. It is set up for the public to post information regarding certain companies and anyone who visits the website can obtain that information or post one's own message. There is no service being sold or promoted and no affirmative commercial conduct initiated on behalf of the website. While we find that the website itself is passive, we must still decide whether Ingram's allegedly tortious activity on the website can also be considered passive.

Plaintiffs accuse Ingram of allegedly posting defamatory information about Medinah and Price on the Raging Bull website, and that those false and defama-

tory statements led to the devaluation of Medinah's stock. In addition, Plaintiffs assert that Ingram allegedly told Price that he was a "professional Internet basher," which is proof he had a commercial purpose in engaging in the alleged defamation. Price Aff., Ex. 1 attached to Opp. Even assuming that the evidence that Ingram is a "professional Internet basher" could be construed as having a commercial purpose, which we doubt, Plaintiffs have failed to show purposeful availment.[1]

*Cybersell* held that "something more" is required than merely posting information on a website to show purposeful availment. Two district court cases, *Bailey v. Turbine Design, Inc.*, 86 F.Supp.2d 790 (W.D.Tenn. 2000) and *Barrett v. Catacombs Press*, 44 F.Supp.2d 717 (E.D.Pa.1999), inform our decision as what that "something more" might be in the case of alleged defamation over the Internet.

In *Bailey*, the court found a plaintiff failed to prove that an out of state defendant accused of posting defamatory information on a website purposefully availed itself of benefits of the forum state. 86 F.Supp.2d at 795. Specifically, there was no evidence the defendant had any contacts with the forum besides the postings on the site, which could be accessed by anyone; no evidence to suggest any outreach to the forum any more than to persons residing elsewhere; and no evidence that any resident of the forum ever visited the website. *See id.* The court held "the mere fact that the website contained defamatory information concerning the plaintiff does not, absent some supporting evidence, mean that the defendant possessed the intent to target residents of the forum." *Id.* at 796 (citations omitted).

Although here the alleged defamation was posted on a website where anyone could post information, rather than by the owner of a website, it does not appear that this difference affects our analysis. In *Barrett,* the court found that alleged defamatory messages posted on an Internet discussion group site should not be considered any differently from allegedly defamatory information posted on a passive website. 44 F.Supp.2d at 728. Similar to a passive website, the court reasoned that the "nature and quality of the contacts made by the Defendant were accessible around the world and never targeted nor solicited [residents of the forum]." *Id.* Because anyone could access the discussion group, the court could not see how it could be inferred that the postings alone could be directed at residents of the forum. *See id.*

Similarly, here, there is no evidence that Ingram did any business with anyone in Nevada or that he directed his allegedly defamatory comments at Nevada. He posted messages on a website that could be accessed by anyone around the world who had access to the Internet. There is no evidence that any Nevada resident actually did access the alleged defamation. Moreover, Price is a citizen of Canada and Medinah is headquartered in California, with its operations in Chile, which makes the inference that Ingram's alleged defamation was directed at Nevada even more tenuous.

We hold that, similar to the situations considered in *Bailey* and *Barrett,* Plaintiffs have failed to show that the alleged defamatory postings were directed at residents of Nevada. Nor is there any proof that the alleged defamation was intended to cause injury in Nevada, as illustrated by the lack of evidence that either Price or Medinah would suffer injury in Nevada

---

1. We do not consider Ingram's factual argument that the information should not be considered because it is false because we resolve all conflicts in the evidence in Plaintiffs' favor at this stage. *Bancroft,* 223 F.3d at 1087.

due to Ingram's alleged statements. *See Bailey,* 86 F.Supp.2d at 796. Plaintiffs have failed to produce evidence that there was "something more" than a passive posting on a website to prove that Ingram directed the alleged defamation at Nevada. *Cybersell,* 130 F.3d at 419. Therefore, there was no purposeful availment.

### 2. The Effects Test

■ In addition to the sliding scale analysis discussed above, the "effects test" developed in the Supreme Court case of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), is another means by which purposeful availment can be measured in the context of tortious conduct on the Internet. To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Bancroft,* 223 F.3d at 1087 (citations omitted).

■ The Ninth Circuit has held that the effects test does not stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction. *Id.* Instead, like the analysis discussed in *Cybersell,* "something more" is required to establish that the defendant expressly aimed its conduct at the forum. *Id.* In *Bancroft,* the court defined the concept of "express aiming" as encompassing "wrongful conduct individually targeting a known forum resident." *Id.*

Plaintiffs argue that alleged defamatory postings on the Internet alone are enough to subject a defendant to personal jurisdiction in a forum where the alleged defamation can be accessed under the effects test. In support, Plaintiffs cite *EDIAS Software Int'l, Inc. v. BASIS Int'l Ltd.,* 947 F.Supp. 413 (D.Ariz.1996). *EDIAS* does seem to stand for the proposition that a defendant who directs defamatory information at a forum that allegedly causes foreseeable harm in that forum is subject to personal jurisdiction. However, *EDIAS* is factually distinguishable and legally precarious.

In *EDIAS,* the court found it significant that the plaintiff's principal place of business was in the forum. The court held the defendant's messages were directed at the forum, because that is where the plaintiff's business was located. 947 F.Supp. at 419. That connection is missing here. Medinah is merely incorporated in Nevada. Its principal place of business, headquarters and operations are not in Nevada. Therefore, there is no evidence even under *EDIAS* that Ingram directed his alleged defamation there.

In addition, Ingram argues that *EDIAS* is not a correct statement of law. We agree. We note that *EDIAS* was decided in 1996. While by most standards this is not a very long time in terms of decisional law, in the history of cyberlaw, it is. To be sure, the law has since developed and the requirements for establishing jurisdiction on this limitless medium have become more stringent. For example, *EDIAS* preceded *Bancroft,* 223 F.3d at 1087, and *Cybersell,* 130 F.3d at 420, two Ninth Circuit authorities which have held that proof that harm is foreseeable in the forum is not enough to satisfy the effects test. Instead, the presence of individualized targeting of a resident of the forum appears to be dispositive. *Bancroft,* 223 F.3d at 1087.

The recent district court decisions of *Bailey* and *Barrett* provide a more current articulation of the law in this area and we turn to them for guidance. These cases suggest that there must be evidence that defamation actually had an effect on residents of the forum or that the alleged defamation actually targeted the forum in

order for the "express aiming" requirement to be satisfied.

For example, in *Barrett*, echoing the requirement of individualized targeting discussed in *Bancroft*, the court found that mere allegations by the plaintiff that effects of the conduct were felt in the forum were not enough without evidence that any forum resident had accessed the website posting the information at issue. *Id.* at 731. In addition, the *Bailey* court found that the "express aiming" component was unsatisfied because there was no proof that the alleged defamatory comments had anything to do with plaintiff's state of residence. 86 F.Supp.2d at 796; *see also Barrett*, 44 F.Supp.2d at 731 (finding that alleged defamation concerning plaintiff's national role, rather than work in the forum shows lack of express aiming).

■ Here, Plaintiffs do not dispute that Price is a citizen of Canada; that Medinah's headquarters are in California or that the operations are in Chile. Plaintiffs present no evidence that Ingram targeted Nevada or its residents in making his alleged defamatory statements. Instead, Plaintiffs argue that the following additional evidence establishes that there was a harm in Nevada.

Notably, although Plaintiffs agree that there must be more than Medinah's "merely being incorporated in Nevada" for Ingram's alleged defamation to have an effect there, they argue that potential ramifications of being incorporated in Nevada constitute evidence of such harm here. Specifically, Plaintiffs submit that Ingram's alleged attacks at devaluing Medinah's stock value "causes harm in Nevada because that is were [sic] the stock is issued and the stock ledger is maintained." Opp. at 6, n. 10. In addition, Plaintiffs assert that if Medinah were to become insolvent due to Ingram's conduct, Nevada law requires that it apply for receivership

in Nevada courts.. We do not find that this "harm" is anything more than a potential offshoot of Medinah being incorporated in Nevada, which Plaintiffs have already conceded is not enough to satisfy the effects test.

Plaintiffs also submit that because there are twenty-five Medinah shareholders in Nevada, harm is felt in the forum. However, we agree with the courts that have found that a showing that residents of a forum had access to a website is insufficient to prove that defamatory statements were aimed at the forum. *See, e.g., Lofton v. Turbine Design, Inc.*, 100 F.Supp.2d 404 (N.D.Miss.2000)(rejecting as the minority view that jurisdiction could be found based solely on residents of a forum state simply having access to a website); *Barrett*, 44 F.Supp.2d at 719 (finding ability to access insufficient without proof of actual access).

Plaintiffs' evidence fails to show that Ingram's alleged defamatory statements posted on the Raging Bull website were "expressly aimed" at Nevada. Accordingly, Plaintiffs have not met their burden of showing purposeful availment under the effects test.

Because Plaintiffs have failed to establish a prima facie showing of purposeful availment under either the sliding scale analysis or the effects test, we need not reach the other elements necessary to find jurisdiction. The complaint must be dismissed for lack of personal jurisdiction.

***IT IS, THEREFORE, HEREBY ORDERED THAT*** Defendant James Ingram's motion to dismiss (# 87) is ***GRANTED***.