**TRIPLE A PARTNERSHIP, Plaintiff,**

v.

**MPL COMMUNICATIONS, INC., Defendant.**

**Civ. A. No. 85–2010.**

United States District Court, D. Kansas.

March 10, 1986.

Jerry D. Fairbanks, Whalen, Fairbanks & Rigor, P.A., Goodland, Kan., Richard R. Johnson, Kokjer, Kircher, Bradley, Wharton, Bowman & Johnson, Kansas City, Mo., for plaintiff.

Thomas R. Farrell, Paul V. LiCalsi, Gold, Farrell & Marks, New York City, John L. Vratil, Lathrop, Koontz, Righter, Clagett & Norquist, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

On January 8, 1985, plaintiff, Triple A Partnership, filed a complaint against defendant, MPL Communications, Inc. ["MPL"], for an alleged infringement of plaintiff's federally-registered copyright in a musical composition entitled "That'll Be The Day." This matter is now before the court on defendant's motion to dismiss un-

der Rule 12(b) of the Federal Rules of Civil Procedure. Specifically, defendant urges that plaintiff's complaint should be dismissed: (1) pursuant to Rule 12(b)(2) and (3) on the grounds that this court lacks personal jurisdiction over defendant and venue is not proper in this district; or (2) pursuant to Rule 12(b)(6) on the ground that plaintiff's claim is barred under the doctrines of laches and estoppel. In the alternative, defendant seeks transfer of the action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). For the reasons discussed below, we deny both defendant's motion to dismiss for lack of personal jurisdiction and venue and its motion to transfer. Defendant's motion to bar plaintiff's claim under the doctrines of laches and estoppel is converted to a motion for summary judgment.

## I. *Background Facts.*

Plaintiff is a Kansas partnership composed of three brothers—Art, Al, and Allaire Homburg. In its complaint, plaintiff alleges that prior to February 25, 1957, Art and Al Homburg wrote an original musical composition entitled "That'll Be The Day." Plaintiff also alleges that Al Homburg publicly performed that composition as early as September of 1956. On March 11, 1957, Art and Al Homburg registered the composition with the United States Copyright Office.

Plaintiff also alleges that defendant's "predecessors" had access to public performances of the composition and infringed on that composition by registering and exploiting a composition also entitled "That'll Be The Day," which was made famous by Buddy Holly and the Crickets in the 1950's. The infringing composition allegedly is "largely copied" from Art and Al Homburg's work. Plaintiff further alleges that the infringing composition was first registered on April 16, 1957, and that defendant and its division, Wren Music Company ["Wren"], are now the sole owners of the allegedly infringing work.

MPL and Wren are New York corporations with their principal places of business in New York. Neither corporation is qualified to do business, nor has an office, in Kansas. Both corporations are in the music publishing business and own rights in a number of musical compositions, including the composition in issue.

Defendant receives revenues from its compositions by licensing the rights to the compositions to various independent entities, none of which are located in Kansas. These independent entities, however, exploit the Kansas market and pay royalties to defendant. For example, the defendant's compositions, including the allegedly infringing work, are performed live and in radio programs broadcast in Kansas. Defendant authorizes BMI and ASCAP to license these performances and to obtain revenues from them. Defendant, in turn, receives revenues from BMI and ASCAP. Defendant has also licensed the performance of the allegedly infringing composition in the movie "The Buddy Holly Story," which has been shown in Kansas in movie theaters and in television broadcasts. Defendant was paid for this film performance by its licensee, Buddy Holly Productions, Inc., of Culver City, California.

Defendant also has a licensing agreement with the Harry Fox Agency, a New York corporation, which authorizes the licensee to sell recordings of defendant's compositions, including the work in question. Some of these recordings are sold in Kansas and defendant receives revenues from the Harry Fox Agency based on the number of recordings sold. Finally, defendant also has a licensing agreement with the Hal Leonard Publishing Company of Milwaukee, Wisconsin, which authorizes Hal Leonard to publish and sell printed sheet music in Kansas and nationwide. Again, defendant is paid directly by its licensee in an amount based on the sales volume of the sheet music.

## II. *Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue.*

Defendant asserts that plaintiff's complaint should be dismissed under Rule 12(b)(2) and (3) of the Federal Rules of Civil

Procedure on the grounds that this court lacks personal jurisdiction over defendant and that this district is an improper venue for plaintiff's action. In a copyright action, the standards for determining whether the court has personal jurisdiction over the defendant and whether venue is proper are identical. Section 1400(a) of Title 28, United States Code, governs venue in copyright actions. That section permits a suit for copyright infringement "in the district in which the defendant or his agent resides or may be found." Because defendant is a resident of New York, the state of its corporation, venue is proper in Kansas only if defendant is "found" in Kansas. As the court stated in *Battle Creek Equipment Co. v. Roberts Manufacturing Co.*, 460 F.Supp. 18 (W.D.Mich.1978), "[i]t is well settled that a corporation is 'found' in any district in which personal jurisdiction might be obtained over it." *Id.* at 22.

The issue of personal jurisdiction involves two discrete steps of analysis. First, it must be determined whether the defendant's conduct falls within the scope of one of the provisions of the Kansas long-arm statute. Second, it must be determined whether the exercise of jurisdiction comports with due process requirements. *Thermal Insulation Systems, Inc. v. Ark-Seal Corp.*, 508 F.Supp. 434 (D.Kan.1980).

We turn first, then, to an examination of the Kansas long-arm statute. K.S.A. 60–308(b). That statute provides:

Any person whether or not a citizen or resident of this state, who in person or *through an agent or instrumentality* does any of the acts hereinafter enumerated, thereby submits said person ... to the jurisdiction of the courts ... as to any course of action arising from the doing of any said acts:

(1) Transaction of any business within this state;

*Id.* (emphasis added). Defendant argues that its conduct does not fall within this statute. We disagree.

Defendant's position is that it has not transacted any business in Kansas because it operates solely through licensing agreements with wholly independent corporations that are located outside of Kansas. Moreover, defendant states that it has no office, bank account, employee, or property located within Kansas. As plaintiff correctly notes, however, the long-arm statute does not require that the nonresident be present in Kansas. *See, e.g., Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan.1978). Nor does it require that the enumerated acts be committed by the nonresident. Rather, the statute expressly provides that a nonresident submits to the jurisdiction of Kansas courts if, "in person or *through an agent or instrumentality*" that person commits any of the enumerated acts. We agree with plaintiff that defendant has transacted business in Kansas through "an instrumentality," within the meaning of the Kansas long-arm statute.

As noted above, defendant has entered into agreements with several companies regarding the licensing of the allegedly infringing work. Through these agreements, defendant receives revenues from the sale and promotion of its compositions in Kansas and nationwide. In fact, without these agreements and the subsequent sale of the songs, defendant would receive no revenues from its compositions.

For example, pursuant to an agreement with defendant, the Harry Fox Agency licenses the making of recordings of the song in question. The Harry Fox Agency receives revenues, and pays defendant royalties, based on the number of records sold in Kansas and nationwide. Similarly, defendant has a licensing agreement with the Hal Leonard Publishing Company. That company publishes and sells sheet music of the song, "That'll Be The Day" in Kansas and nationwide, and defendant receives revenues from Hal Leonard based on the sales volume of the sheet music. From these facts, we conclude that the Hal Leonard Publishing Company and the other companies with which defendant has licensing agreements are "instrumentalities" through which defendant transacts business in Kansas.

We base that conclusion on several grounds. First, we have previously held that the Kansas long-arm statute was drafted to prevent a defendant from defeating jurisdiction by conducting its activities through an agent or an "instrumentality." Thus, in *Energy Reserves Group, Inc.*, we stated that the long-arm statute "authorizes service on a non-resident that *purposefully seeks and foreseeably benefits* from its active relationship with another entity that has transacted business in the forum that gives rise to plaintiffs' claim." 460 F.Supp. at 514 (emphasis added). It is true that the "instrumentality" through which the nonresident defendant in *Energy Reserves Group* did business in Kansas was an affiliated corporation. But that case does not limit its construction of the term "instrumentality" to affiliated corporations, and we see no reason to so limit that term in the instant case.

Second, a broad construction of the term "instrumentality" is consistent with the oft-repeated statement that the Kansas long-arm statute "reflects a conscientious state policy to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause...." *Woodring v. Hall*, 200 Kan. 597, 602, 438 P.2d 135, 141 (1968); *Whisenant v. Whisenant*, 219 Kan. 387, 548 P.2d 470 (1976); *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974). Because of that policy, "courts have frequently interpreted the statutory long-arm provisions as broadly as possible, leaving as a restriction on extraterritorial service only the constraints of the due process clause...." *J.E.M. Corporation v. McClellan*, 462 F.Supp. 1246, 1250 (D.Kan. 1978).

Finally, defendant relies on the decision in *Selle v. Gibb*, No. 78-C-3656 (N.D.Ill. Aug. 2, 1979), to support its position that the long-arm statute does not reach defendant. We believe that defendant's reliance is misplaced. In *Selle*, the United States District Court for the Northern District of Illinois held that the Illinois long-arm statute did not extend long-arm jurisdiction over Stigwood Music, Inc., a music publishing company whose licensing activities were analogous to defendant's activities in the instant suit. Defendant argues that *Selle* is controlling because the Kansas long-arm statute is based in large part on the Illinois statute and Kansas courts have often thus given deference to interpretations of the Illinois statute by Illinois courts. *See, e.g., Woodring v. Hall*, 200 Kan. 597, 438 P.2d 135 (1968). We note, however, that the Illinois long-arm statute, unlike the Kansas statute, only extends jurisdiction over a defendant who transacts business in Illinois *in person* or *through an agent*. It does not provide for jurisdiction over a nonresident who transacts business through an "instrumentality." Accordingly, the *Selle* decision is inapposite to a determination of the scope of the term "instrumentality" in the Kansas statute. Moreover, we can only assume that the Kansas legislature, by adding that term, intended the Kansas statute to have a greater reach than the Illinois statute.

The determinative question, then, is whether our exercise of personal jurisdiction over defendant would offend principles of due process. The Due Process Clause of the Fourteenth Amendment limits the power of a state to assert in personam jurisdiction over a nonresident defendant. *Pennoyer v. Neff*, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877). The requirements of that clause are satisfied when a nonresident corporate defendant has "certain minimum contacts with the [forum] such that the maintenance of this suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278 (1940). In determining whether defendant has the requisite minimum contacts with the forum, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, 465 U.S. 783 at 788, 104 S.Ct. 1482 at 1486, 79 L.Ed.2d 804 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579-80, 53 L.Ed.2d 683 (1977)).

To some extent, due process is a matter of foreseeability. "But the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Moreover, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Defendant argues that it has no contacts with the state of Kansas and that it has not purposefully availed itself of the forum state's benefits. Defendant stresses that it has no presence in the state and that the allegedly infringing work is brought into Kansas by independent companies. Nonetheless, because defendant uses these independent companies as a means of exploiting business opportunities with Kansas residents, we conclude that defendant does have the requisite minimum contacts with Kansas for us to exercise *in personam* jurisdiction.

In *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Court held that a New York retail Volkswagen dealer and the regional distributor for Volkswagen did not have minimum contacts with Oklahoma. In so holding, the Court noted that "the record [does not] show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, *through others,* serve or seek to serve the Oklahoma market." *Id.* at 295, 100 S.Ct. at 566 (emphasis added). That factual matter was critical to its holding. As the Court stated:

> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297–98, 100 S.Ct. at 567 (emphasis added). Significantly, the Court recently reaffirmed the "stream of commerce" doctrine in *Burger King v. Rudzewicz,* —— U.S. ——, ——, 105 S.Ct. 2174, 2180–82, 85 L.Ed.2d 528 (1985).

We believe that the language quoted above from *World-Wide Volkswagen* indicates that defendant is subject to personal jurisdiction in Kansas. The sale of defendant's product—the song in question—in Kansas, is not an isolated occurrence. Defendant indirectly, through companies such as the Hal Leonard Publishing Company, serves the Kansas market.

We recognize that normally the stream of commerce doctrine is applied to manufacturers of goods or component parts. But we can see no logical reason why that doctrine should be so restricted here. In fact, in the instant case, defendant has a more direct interest in the sale of its product in the forum state than does a manufacturer in a typical stream of commerce case. In most stream of commerce cases, the manufacturer sells its product to a distributor for a certain price, the sale is complete, and the distributor then takes the product into other states. The manufacturer's revenue is not directly dependent on the sale by the distributor of the product in other states. But in the instant case, defendant not only delivers its product—the allegedly infringing work—into the stream of commerce, it *directly* derives revenues from the sale of the song in Kansas by Hal Leonard and the Harry Fox Agency. For example, defendant receives no money from the sale of sheet music of the work in question until and unless Hal Leonard sells the sheet music in Kansas and other states.

We conclude, therefore, that defendant has purposely conducted its activities to make its product available in as many forums as possible, including Kansas. By delivering its song, "That'll Be The Day," into the stream of commerce with the expectation that it would be purchased by consumers in the forum state, defendant "benefits legally from the protection provided by the laws of the forum state for its products, as well as economically from indirect sales to forum residents." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir.1981), *quoted in Asahi Metal Industry Co. v. Superior Court*, 39 Cal.3d 35, 216 Cal.Rptr. 385, 389, 702 P.2d 543, 547 (1985). Defendant has thus invoked the benefits and protections of the forum state's laws and thus should have reasonably anticipated being haled into court in Kansas. *See, e.g., Asahi Metal Industry Co.*, 702 P.2d 543; *Nelson v. Park Industries, Inc.*, 717 F.2d 1120 (7th Cir.1983).

Finally, defendant also argues that plaintiff lacks "the minimum contacts with Kansas which would make the exercise of long-arm jurisdiction appropriate or equitable." Defendant's Memorandum in Support at 20. To the extent that defendant is contending that plaintiff must have contacts with Kansas before the court may constitutionally exercise *in personam* jurisdiction, defendant is simply wrong as a matter of law. The plaintiff's lack of "contacts" with the forum state will not defeat otherwise proper jurisdiction. *Calder v. Jones*, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779, 104 S.Ct. 1473, 1480, 79 L.Ed.2d 790 (1984).

On the other hand, it is true that even if "a defendant [has] purposefully established minimum contacts within the forum *state,* these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, — U.S. at —, 105 S.Ct. at 2182–84 (quoting *International Shoe Co. v. Washington*, 326 U.S. at 320, 66 S.Ct. at 160). Among those factors are the forum state's interest in adjudicating the dispute and the plaintiff's interest in obtaining convenient and effective relief. *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564.

Applying those factors to the instant case, we are convinced that our assertion of in personam jurisdiction will not offend traditional notions of "fair play." Kansas has an interest in protecting the proprietary interest of its residents, including plaintiff, and is a convenient forum for plaintiff and at least two of the brothers who form the partnership. Moreover, if anything, the interest of "fair play" is best satisfied if this matter is tried in Kansas. If defendant's view were accepted, any individual who believed that defendant had infringed his copyright would have to try his lawsuit in defendant's home state of New York. In any event, once it is determined that a defendant has "minimum contacts" with the forum state, such defendant "must present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, — U.S. at —, 105 S.Ct. at 2184–2186. Defendant's showing is far from compelling.

In sum, we are satisfied that our exercise of personal jurisdiction over defendant in this case comports with the requirements of due process and that venue is thus also proper. Defendant's motion to dismiss for lack of jurisdiction and lack of venue is, therefore, denied.

## III. *Defendant's Motion to Transfer.*

■ Defendant also urges the court to transfer this action to the United States District Court for the Southern District of New York. As authority for its transfer motion, defendant cites both 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). Section 1406(a), however, concerns transfer of a case from a district in which venue is improper to another district with proper venue. Because we have already concluded that venue is proper in this case, we need not discuss section 1406(a). For the reasons discussed below, we also conclude that transfer under section 1404(a) is inappropriate.

Section 1404(a) of Title 28, United States Code, governs motions for change of venue. That section provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

We have frequently recited the standards to be applied to section 1404(a) motions:

> It is hornbook law that the burden is on the moving party to establish that a suit should be transferred under § 1404(a).... Unless the balance of the consideration is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed.... The plaintiff's choice of forum is entitled to great weight and may not lightly be set aside.... This court further notes that the exercise of the power to transfer under § 1404(a) is committed to the sound discretion of the trial court after consideration of all the relevant interests.

*Ammon v. Kaplow*, 468 F.Supp. 1304, 1313 (D.Kan.1979) (quoting *Foley Meats, Inc. v. Bojalad & Co.*, No. 77–1334 (D.Kan., *unpublished*, Feb. 15, 1978)) (citations omitted). In the instant case, defendant has not persuaded the court that the balance of factors strongly favors transfer.

Defendant first argues that transfer to New York is appropriate because its witnesses reside in that state and its corporate documents are located there. Although defendant does not specifically list such witnesses or records, it is clear that most witnesses or documents defendant might use at trial are located in New York. Nonetheless, Kansas is a more convenient forum for plaintiff and its witnesses. One of the three brothers who formed the partnership, Allaire Homburg, lives and resides in Kansas. Arthur Homburg was born and raised in Kansas, and now lives in Ralston, Nebraska, a suburb of Omaha. He frequently travels to the Kansas City area for business and personal reasons and considers Kansas to be his permanent residence. Thus, transferring this case to New York would impose a severe inconvenience on him. Alfred Homburg, who was also born and raised in Kansas and attended college here, now resides in Pittsburgh, Pennsylvania. He has significant ties with Kansas, although he will obviously have to travel whether the trial is in Kansas or in New York. Finally, the business records and other nontestimonial evidence of the partnership are located in Kansas.

On these facts, we conclude that a transfer of this action to New York would merely shift the burden of inconvenience from plaintiff to defendant. We have often stated that "[a] shifting of inconvenience from one side to another is not a strong reason for transfer." *F.D.I.C. v. Tobias*, No. 83–2446 (D.Kan., *unpublished*, Oct. 23, 1984). Therefore, defendant's argument is unpersuasive.

Defendant also asserts that the three brothers formed the Kansas partnership to harass defendant and to engage in forum shopping. This bold assertion, however, is not supported by the facts. All three brothers have had life-long contacts with Kansas. Moreover, the three brothers recorded an album and promoted sales of the album in Kansas. The partnership was formed to promote the music business engaged in by the three brothers and, to that end, the various songs written by the brothers were assigned to the partnership. In any event, because this matter involves a question of federal law, defendant's accusation that the three brothers have engaged in forum shopping is not credible.

Finally, we also note that defendant is much better able to bear litigation costs in a distant forum than is plaintiff. Although this factor is by no means conclusive, it does provide an additional reason why we should not disturb plaintiff's choice of forum. In sum, we find nothing "in the interests of justice" that requires us to deprive plaintiff of its choice of forum. Defendant's motion to transfer is, therefore, denied.

## IV. *Estoppel and Laches.*

Defendant also moves for dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that

plaintiff's copyright claim is barred under the doctrines of laches and estoppel. Essentially, defendant urges that plaintiff's claim is barred by laches because plaintiff delayed twenty-eight years in asserting that claim against defendant.

In support of its motion, however, defendant relies heavily on an affidavit by John L. Eastman, Vice President of MPL Communications, Inc. Because our consideration of defendant's motion requires consideration of matters outside the pleadings, we shall treat it as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b)(6). Both sides shall be given a reasonable opportunity to present all material that is pertinent to this motion.

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of personal jurisdiction and venue is denied.

IT IS FURTHER ORDERED that defendant's motion to transfer this action to the United States District Court for the Southern District of New York is denied.

IT IS FURTHER ORDERED that defendant's motion to dismiss, pursuant to Rule 12(b)(6), is converted to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure on the issue of estoppel and laches only. Defendant shall have twenty (20) days from the date of this order to file any additional material. All additional material shall conform to Rule 15 of the Local Rules. Plaintiff is given twenty (20) days thereafter to file its material, which shall also conform with Rule 15.