**BRIDGEPORT MUSIC, INC., et al.**

v.

**AGARITA MUSIC, INC., et al.**

No. 3:01–0835.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 8, 2002.

---

Richard S. Busch and D'Lesli M. Davis, Nashville, TN, for plaintiff.

Samuel Lipshie, Nashville, TN, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court is defendant Agarita Music, Inc.'s ("Agarita") motion to dismiss, or in the alternative, to transfer (Docket No. 11)[1]. For the reasons set forth below, the motion to dismiss is GRANTED, and the motion to transfer is DENIED as moot.

This case is one of several hundred[2] filed by plaintiffs against various defendants in which plaintiffs allege that the

---

**1.** This motion was originally brought by two defendants, Agarita and Disney Music Publishing. Disney Music Publishing was dismissed from this action on consent of the parties by Court Order dated Dec. 13, 2001 (Docket No. 31).

**2.** Plaintiffs originally filed one massive complaint against almost eight hundred defendants alleging close to five hundred causes of action. *Bridgeport Music, Inc. v. 11C Music,* Case No. 3:01–0412 (M.D.Tenn.2001). The Court severed the case by count into 476 surviving cases (the "Bridgeport Cases"), in-

defendants, all entities and/or individuals associated with the "rap" or "hip-hop" music industry, have infringed upon plaintiffs' copyrights in several sound recordings and musical compositions by "sampling" these recordings and/or compositions in subsequent recordings, compositions and performances. The First Amended Complaint (Docket No. 6) alleges copyright infringement arising out of the composition titled "Fuck A 40 Oz" on the sound recording "Swing'n" by the rap performer Hi–C, which plaintiffs allege contains an infringing "sample" of the composition "Atomic Dog."

## FACTS

Agarita is a California corporation with its principal place of business in California. Agarita claims that there is no basis for asserting personal jurisdiction over it in Tennessee because Agarita does not do business in Tennessee, plaintiffs' cause of action does not arise from any activities of defendant in Tennessee, and defendant does not have systematic and continuous contacts with Tennessee that would justify assertion of personal jurisdiction (Docket No. 14).

In response, plaintiffs allege that Agarita, a music publishing company, has directly and indirectly transacted business in Tennessee by (i) licensing its musical compositions to be included in sound recordings sold in Nashville, Tennessee, (ii) collecting royalties from sales of its com-

positions in Nashville, Tennessee, and (iii) licensing performances of its compositions in Tennessee (Docket No. 28). In relation to the subject of these lawsuits, plaintiffs allege that Agarita has infringed on plaintiffs' copyrights through "sampling" of its compositions and has participated in the distribution of the infringing compositions and/or sound recordings in Tennessee, thereby committing torts and causing tortious injury in Nashville, Tennessee (Docket No. 28, pp. 1–2).

■ Plaintiffs' jurisdictional allegations in the First Amended Complaint do not provide any factual basis for assertion of jurisdiction, as they recite no facts specific to Agarita or any acts or omissions of Agarita upon which jurisdiction may be based (Docket No. 6, ¶ 17). However, the Federal Rules of Civil Procedure do not require plaintiffs to plead any facts alleging personal jurisdiction in their complaint. Wright & Miller, Fed. Practice and Procedure: Civil 2d § 1363, at 458 (West 1990). The Court must look, then, to plaintiffs' submissions in response to Agarita's motion[3] to see if plaintiffs have asserted facts sufficient to establish a prima facie showing of jurisdiction.

In their Statement of Facts (Docket No. 29), plaintiffs allege that: (i) Agarita is a music publishing business operating under the umbrella of Disney Music Publishing that earns money through mechanical licensing[4], synchronization licensing[5], print

cluding the instant case, by Order dated July 25, 2001 (Case No. 3:01–0412, Docket No. 349).

3. Plaintiffs' Response to the Motion of Defendant Agarita Music, Inc. to Dismiss, or in the Alternative, to Transfer dated Dec. 9, 2001 (Docket No. 28); Statement of Facts in Support of Plaintiffs' Response to the Motion of Defendant Agarita Music, Inc. to Dismiss, or in the Alternative, to Transfer dated Dec. 9, 2001 (Docket No. 29); Transcript of the Dec. 4, 2001 deposition of Susan A. Borgeson

(Docket No. 29, Ex. A); and Declaration of Jane Peterer, executed on Dec. 7, 2001 (Docket No. 29, Ex. B).

4. "Mechanical licensing" is a music industry term that describes a license from the copyright holder for use of its composition in a sound recording in return for payment of a royalty; royalties are usually paid each time a copy of the sound recording is sold. Statement of Facts, ¶¶ 12–13, 20 (Docket No. 29).

5. "Synchronization licensing" describes a license for use of a composition in a film, pre-

publications, and performances of its compositions (¶¶ 10, 11); (ii) Agarita has granted a mechanical license for the allegedly infringing composition to be included in the sound recording "Swing'n" by Hi–C, for which it has received royalty income (¶¶ 23–24); (iii) because its mechanical licenses grant the licensee a nationwide territory, Agarita has an "expectation" that its musical compositions will be included in sound recordings that will be distributed throughout the United States, including Tennessee (¶¶ 15–16); (iv) the allegedly infringing composition is subject to a nationwide licensing agreement between all the Disney Music Publishing entities, including Agarita, and a print publisher (¶¶ 25–31); (v) Agarita is affiliated with ASCAP, which administers licenses with third parties for the live performance of Agarita's compositions throughout the United States, including Tennessee, collects performance fees and remits them to Agarita (¶¶ 32–35); and (vi) "Swing'n" was distributed nationwide by Tommy Boy Music, Inc. for Skanless Records, which apparently entered into a mechanical license with Agarita for use of the allegedly infringing composition (¶¶ 39–45).

The question for the Court is whether the foregoing facts provide a sufficient basis for this Court to assert personal jurisdiction over Agarita. The Court concludes that they do not.

## ANALYSIS

### I.

#### Standard

■ On a motion to dismiss for lack of personal jurisdiction, plaintiffs have the burden of setting forth specific facts in support of the Court's exercise of personal jurisdiction over the moving defendants. *Theunissen v. Matthews*, 935 F.2d 1454,

1458 (6th Cir.1991). Plaintiffs cannot rely solely on the allegations pleaded in their complaint. *Id.*

■ The Sixth Circuit has clearly defined the procedure and standards for determining personal jurisdiction. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271–1272 (6th Cir.1998) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)). The district court may determine the motion on the basis of affidavits alone; it may permit discovery in aid of the motion; it may conduct an evidentiary hearing on the merits of the motion, or it may reserve its decision until trial. *Serras*, 875 F.2d at 1214. Plaintiffs may defeat the motion by making a prima facie showing of jurisdiction in their pleadings and affidavits, which must be considered by the court in a light most favorable to plaintiffs. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996). This burden changes if the court chooses to hold an evidentiary hearing; plaintiffs must then establish jurisdiction by a preponderance of the evidence. *Id.* If the court chooses to rule on the motion without conducting an evidentiary hearing, it "does not weigh the controverting assertions of the party seeking dismissal." *Id.* (quoting *Theunissen*, 935 F.2d at 1459). The Sixth Circuit has determined that "[a]ny other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras*, 875 F.2d at 1214. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff [ ] alleges collectively fail to state a prima facie case for jurisdiction." *CompuServe*, 89 F.3d at 1262. If the defendant's written submissions raise disputed issues of fact or require determinations

recorded radio or television program, or radio or television commercial. 2 LINDEY ON ENTERTAINMENT, PUBLISHING AND THE ARTS § 7.01 (2d ed.2000).

of credibility, the court may exercise its discretion to hold an evidentiary hearing, or may reserve the issue for trial. *Dean,* 134 F.3d at 1272. In this case, the parties' submissions do not raise any issues of disputed facts regarding jurisdiction. Therefore, the Court will resolve the motion by reference to the submissions alone.

■ Because this action raises a federal question, the Court must analyze the personal jurisdiction issue pursuant to Rule 4(k) of the Federal Rules of Civil Procedure, which requires this Court to consider whether jurisdiction over the defendant is consistent with the specific requirements of Tennessee's long-arm statute and constitutional principles of due process. *See, e.g., Mitchell v. White Motor Credit Corp.,* 627 F.Supp. 1241, 1246 (M.D.Tenn.1986). Under Tennessee's long-arm statute, jurisdiction may be asserted on "[a]ny basis not inconsistent with the constitution of this state or of the United States." TENN. CODE. ANN. § 20–2–214(a)(6).[6] This subsection has been interpreted to extend to the limits of personal jurisdiction imposed by the Due Process Clause. *Payne v. Motorists' Mutual Ins. Cos.,* 4 F.3d 452, 455 (6th Cir.1993).[7]

■ The Supreme Court has held that personal jurisdiction over a defendant comports with the Due Process Clause where that jurisdiction stems from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ Personal jurisdiction may be general or specific depending on the nature of the contacts in a particular case. *CompuServe,* 89 F.3d at 1263. General jurisdiction exists "when a defendant has 'continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims.' " *Aristech Chemical Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir.1998) (quoting *Kerry Steel v. Paragon Indus. Inc.,* 106 F.3d 147, 149 (6th Cir.1997)). Specific jurisdiction, on the other hand, subjects the defendant "to suit in this forum state only on the claims that 'arise out of or relate to' a defendant's contacts with the forum.' " *Id.*

■ The Sixth Circuit has established three criteria to be used in determining whether specific jurisdiction exists in a particular case:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Payne,* 4 F.3d at 455 (quoting *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)). The "purposeful availment" requirement is "the *sine qua non* of *in personam* jurisdiction." *Mohasco Indus.,* 401 F.2d at 381–82. It is satisfied "when the defendant's contacts

---

6. *See also* TENN. CODE. ANN. § 20–2–223.

7. The Court's Due Process analysis is governed by the Fifth Amendment of the United States Constitution instead of the Fourteenth Amendment in a federal question case such as this one; however, the standards to be applied under the Fifth Amendment are essentially the same as those applicable under the Fourteenth Amendment. *See, e.g., Dakota Inds., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389 n. 2 (8th Cir.1991).

with the forum state 'proximately result from actions by the defendant himself that create a "substantial connection" with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *CompuServe, Inc.*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–74, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). A defendant should not be haled into a jurisdiction where his contacts are random, fortuitous, or attenuated. *Id.* Plaintiffs argue that defendant is subject to both general and specific jurisdiction.

*Venue*

■ In addition to its jurisdictional challenge, defendant also argues that venue is not proper in the Middle District of Tennessee. The venue provision of the Copyright Act provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights ... may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). It is widely accepted that, for the purposes of this venue provision, a defendant is "found" wherever personal jurisdiction can be properly asserted against it. *Linzer v. EMI Blackwood Music, Inc.*, 904 F.Supp. 207, 214 (S.D.N.Y.1995). Therefore, if Agarita is subject to the personal jurisdiction of this Court, then venue would properly lie in this District. *Walker v. Concoby*, 79 F.Supp.2d 827, 835 (N.D.Ohio 1999).

II.

*Agarita Does Not Have Systematic And Continuous Contacts with Tennessee*

Plaintiffs assert that Agarita can be subject to the general jurisdiction of this Court because of its nationwide licensing activities and those of its agents or representatives (Docket No. 28, p. 8). In certain circumstances, the Sixth Circuit has recognized the actions of a non-resident defendant's agent as demonstrating purposeful availment of the forum by the non-resident defendant. *Chattanooga Corp. v. Klingler*, 704 F.2d 903, 907–8 (6th Cir. 1983). Plaintiffs claim that the activities of Agarita's distributor, Skanless Records,[8] and those of ASCAP within the state of Tennessee are sufficient to establish Agarita's purposeful availment of this forum (Docket No. 28, p. 9). The evidence presented, however, does not show that Agarita's relationships with either Skanless Records or ASCAP fit the definition of agency for jurisdictional purposes. *See Hospital Underwriting Group. Inc. v. Summit Health Ltd.*, 719 F.Supp. 627, 632–33 (M.D.Tenn.1989) (finding of agency for jurisdictional purposes requires, *inter alia*, evidence of right of control).

■ Plaintiffs do not provide any factual information as to Skanless Records' activities in Tennessee on behalf of Agarita. While plaintiffs allege that Skanless distributes sound recordings containing Agarita's compositions (Docket No. 29, ¶¶ 1 n. 1, 39), they have not offered any facts to support a finding of an agency relationship. The only evidence offered is the deposition testimony of Susan Borgeson that (i) confirmed the existence an internal Agarita memorandum regarding issuance of a mechanical license for compositions to appear on the "Swing'n" sound recording, which does not indicate to whom the mechanical license was issued, and (ii) acknowledged that Skanless's logo appears on the back of the "Swing'n" compact disc ("C.D."), but Ms. Borgeson had no knowledge of any agreements with Skanless for the C.D.'s distribution, or whether the C.D. was distributed in Ten-

8. Skanless Records is also named as a defendant in this action.

nessee at all[9] (Docket 29, Ex. A, pp. 16, 37). Plaintiffs' remaining assertions regarding Skanless Records are that it released an album containing two Agarita compositions entitled "Swing'n" (Docket No. 29, ¶ 39), and that "Swing'n" was distributed nationally by Tommy Boy Music, Inc. (*id.*, ¶ 41). This evidence is insufficient to establish an agency relationship. *Id.; see also State Indus., Inc. v. Beckett Gas, Inc.*, 200 F.R.D. 392, 395 (M.D.Tenn. 2001) (plaintiff cannot meet prima facie showing of personal jurisdiction without additional evidentiary support).

Plaintiffs' assertions regarding defendant's relationship with ASCAP are more involved. Plaintiffs allege that ASCAP, as an agent for Agarita, enters into licenses with "innumerable third parties, including third parties located in Tennessee, wherein the third parties are granted the right to perform Agarita's compositions," that AS-CAP collects monies for Agarita from third parties in Tennessee for these performances, and monitors the number of performances in Tennessee in order to collect fees for Agarita (Docket No. 29, ¶¶ 34–35, 49). Plaintiffs also allege that ASCAP has an office in Tennessee, though they do not assert that ASCAP's activities on Agarita's behalf are performed from that office (Docket No. 29, ¶ 33).

Plaintiffs assert that ASCAP's activities in Tennessee can be imputed to Agarita for the purposes of jurisdiction because ASCAP is performing functions for Agarita that are essential to its business, and that these activities are sufficient to confer general jurisdiction (Docket No. 28, pp. 8, 10). Plaintiffs cite three cases in support of this proposition: *In re Magnetic Audiotape Antitrust Litigation*, 171 F.Supp.2d 179, 187 (S.D.N.Y.2001); *Top Form Mills,*

*Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1242 (S.D.N.Y.1977); and *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 120–121 (2d Cir.1967). *Top Form Mills* involved assertions of jurisdiction over a parent based on the activities of the subsidiary in the forum state. 428 F.Supp. at 1242–1243. The *Gelfand* case involved assertions of jurisdiction arising from the activities of a local sales representative for the non-resident defendant. 385 F.2d at 120–121. In *Magnetic Audiotape*, plaintiffs sought to impute the activities of a domestic subsidiary to a foreign parent to establish jurisdiction in an antitrust case. *Magnetic Audiotape*, 171 F.Supp.2d at 186–87. In each of these cases, the operative standard applied by the court was whether the non-resident defendant asserted sufficient control over the resident subsidiary/representative such that an agency relationship was said to exist. *Top Form Mills*, 428 F.Supp. at 1243; *Gelfand*, 385 F.2d at 120–121; *Magnetic Audiotape*, 171 F.Supp.2d at 187. The courts looked to see if the resident "agent" "does *all* the business which [the non-resident defendant] could do were it here by its own officials" (emphasis added). *Top Form Mills*, 428 F.Supp. at 1243 (citing *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967)); *Gelfand*, 385 F.2d at 120–121.

These cases are clearly distinguishable from the facts presented here. Plaintiffs have asserted that Agarita is a music publishing company and that AS-CAP is a performance rights organization (Docket No. 29, ¶¶ 4, 32). While their businesses overlap, they are not coextensive. Plaintiffs have not established that

---

**9.** Whether Ms. Borgeson had any reason to doubt that the C.D. was distributed and sold in Tennessee, as asked by plaintiffs' counsel, is of no significance here. A finding of jur-

isdiction requires assertions of fact, not supposition. *See Serras*, 875 F.2d at 1215 (plaintiff's submissions must state facts with sufficient particularity).

ASCAP operates in Tennessee as a subsidiary or local representative of Agarita. ASCAP provides only licensing services to Agarita, and presumably its activities in this forum are the same for all of its affiliates. In order to assert an agency relationship from which jurisdiction can be imputed, plaintiffs would have to show that ASCAP's activities here are the same as Agarita's would be if Agarita had a Tennessee office—i.e., ASCAP would be performing the functions of a music publishing company in Tennessee. No such showing has been made.[10] *See Magnetic Audiotape,* 171 F.Supp.2d at 187 (non-resident defendant not involved in magnetic audiotape business during relevant period, therefore subsidiaries could not have been doing what non-resident defendant would do if subsidiaries did not exist). The Court concludes that the activities of AS-CAP cannot be imputed to Agarita for the purposes of establishing general jurisdiction. *See R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967, 970 (6th Cir.1987) (conduct and contacts of independent distributor over which non-resident defendant had little, if any, control not attributed to defendant); *Hospital Underwriting Group,* 719 F.Supp. at 633 (essential test under Tennessee law for existence of agency relationship is right of control).

▮ Plaintiffs also asserts that Agarita has contacts with Tennessee through its knowledge that its compositions will be sold on the Internet, and the assumption that "Tennessee consumers can and do purchase Agarita's compositions on these Internet sites, and Agarita receives royalties for such sales to Tennessee consumers" (Docket No. 28, p. 10). Once again, plaintiffs offer no facts to support these assertions; they have not offered any evidence showing a sale of any sound recording containing Agarita's compositions to a Tennessee consumer via an Internet site.[11] The Court will not assume that such sales occur just because defendant's deposition witness "has no reason to doubt" that such a sale occurred (Docket No. 28, p. 10). Plaintiffs therefore have not sustained their burden of asserting facts upon which the Court may assert jurisdiction. *State Indus.,* 200 F.R.D. at 395. The Court also notes that the growing body of law on the subject of assertion of jurisdiction based on Internet activity requires more purposeful behavior than is alleged here. *See Bailey v. Turbine Design, Inc.,* 86 F.Supp.2d 790, 794 (W.D.Tenn.2000) (general posting on the Internet is not sufficient to establish minimum contacts).

▮ Finally, plaintiffs point to Agarita's agreement with a print publisher that grants print rights throughout the United States as a basis for assertion of general jurisdiction (Docket No. 28, p. 10). However, plaintiffs do not provide one example of an activity that has occurred in Tennessee as a result of this agreement. *See* Docket No. 28, ¶¶ 25–31. Plaintiffs' assertions are not sufficiently particular to provide a basis for jurisdiction. *See Serras,* 875 F.2d at 1215.

---

**10.** Moreover, while plaintiffs have asserted that ASCAP's activities on behalf of Agarita involve contacts with Tennessee ("ASCAP samples, throughout the nation, the number of performances of the different compositions in its own catalog, ... royalties received by [ASCAP] represent performances throughout the United States, including Tennessee" (Docket No. 29, ¶ 35)), it has not been shown that they are *performed* in Tennessee. ASCAP has offices in other jurisdictions from which these activities may be performed.

**11.** The only facts asserted by plaintiffs regarding Internet sales are that Ms. Borgeson is not aware of sales availability via the Internet for sound recordings containing Agarita compositions, but that, if sales were made, mechanical royalties would be paid to Agarita for such sales (Docket 29, ¶¶ 51–52).

### III.

*Plaintiffs' Assertions Fail To Establish that Agarita Purposefully Availed Itself of this Forum*

In order for this Court to assert specific jurisdiction over Agarita, plaintiffs must establish the following three criteria: (i) Agarita must be shown to have purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee; (ii) the cause of action must arise from Agarita's activities here; and (iii) the acts of Agarita or consequences caused by it must have a substantial enough connection with Tennessee to make the exercise of jurisdiction over the defendant reasonable. *Payne*, 4 F.3d at 455. Plaintiffs have failed to establish that Agarita has purposefully availed itself of this forum, and therefore Agarita is not subject to the specific jurisdiction of this Court. *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 982 (6th Cir.1992).

"The most authoritative formulation of the [purposeful availment] requirement ... has been provided by the Supreme Court: 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *International Tech. Consultants, Inc. v. Euroglas, S.A.*, 107 F.3d 386, 395–396 (6th Cir.1997) (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183).

Agarita argues that no such purposeful availment has occurred: (i) Agarita did not manufacture, market or distribute any of the allegedly infringing sound recordings in Tennessee or elsewhere; (ii) Agarita has not entered into or performed any contracts in Tennessee with respect to the musical compositions or sound recordings at issue here; and (iii) Agarita has not solicited radio play of its musical composi-

tions in Tennessee. Memorandum of Law in Support of Defendants' Motion to Dismiss, or In the Alternative, to Transfer, p. 8 (Docket No. 14). In response, plaintiffs assert that Agarita purposefully availed itself of the privilege of doing business in Tennessee by (i) entering into contracts with national record companies, ASCAP, and a print publisher to supply compositions to Tennessee and to earn the maximum amount of profits in Tennessee; and (ii) engaging in a clearance process for the inclusion of "samples" of preexisting works within Agarita's own compositions that may or may not have resulted in contacts being made to copyright holders in Tennessee (Docket No. 28, p. 19).

Plaintiffs cite three cases in support of their argument that Agarita purposefully availed itself of this forum: *Linzer v. EMI Blackwood Music*, 904 F.Supp. at 214; *Triple A Partnership v. MPL Communications, Inc.*, 629 F.Supp. 1520, 1524 (D.Kan.1986); and *Gray v. St. Martin's Press*, 929 F.Supp. 40, 48 (D.N.H.1996). The Court does not find these cases to be persuasive as to Agarita's purposeful availment of this forum.

In *Linzer*, the plaintiffs were songwriters who claimed copyright interests in a collection of songs performed by the musical group The Four Seasons and brought an action against the group in the district court for the Southern District of New York. 904 F.Supp. at 211. In deciding whether jurisdiction existed over two individual members of the group under New York's long-arm statute, the *Linzer* court analyzed whether the individual defendants' contacts satisfied the requirements of that statute, but it did not perform a separate due process analysis as required in this Circuit. *See CompuServe*, 89 F.3d at 1263 ("crucial federal constitutional inquiry" is whether non-resident defendant has sufficient contacts; citing three crite-

ria of purposeful availment, cause of action arising from activities in forum, and substantial connection of defendant's activities to forum). The *Linzer* court determined that the individuals' contracts with two licensing agencies *located in New York* that conducted their activities, including passing on royalties to the individuals, *in New York,* were sufficient to satisfy the requirements of "transacting business" in New York under the long-arm statute. *Id.* at 213. The court relied on the holding in *Greenky v. Irving Music, Inc.,* 217 U.S.P.Q. 750 (S.D.N.Y.1981), where the court found that "by soliciting services of *New York* licensing agents for the licensing and promotion of the Songs in this state and throughout the nation, a party contracts to sell its goods or services here and thus exposes itself to the jurisdiction of New York courts" (emphasis added). *Id.* at 214.

Here, plaintiffs have not shown that Agarita's contract with ASCAP provides for the provision of services *in Tennessee,* and while ASCAP maintains an office here, it is a New York corporation [12] and plaintiffs have proffered no facts to support the conclusion that its activities on behalf of Agarita, including collecting and delivering royalty payments to Agarita, are performed here as opposed to New York or elsewhere. Therefore, this Court does not find the reasoning in *Linzer* to be dispositive as to activities of all licensing agencies, and, without any Tennessee-specific facts in the record, declines to attribute ASCAP's activities to Agarita as purposeful availment. *State Indus.,* 200 F.R.D. at 396.

The *Linzer* court also found that the individual defendants were alleged to have committed several tortious acts that brought them within the ambit of New York's long-arm statute. *Id.* at 214. One of those torts was copyright infringement, which, under New York law, is a commercial tort deemed to have occurred at the point of consumer purchase. *Id.* (citing *Lipton v. The Nature Co.,* 781 F.Supp. 1032, 1036 (S.D.N.Y.1992)). Plaintiffs claim that another basis for specific jurisdiction to be asserted against Agarita is that Agarita is alleged to have committed the commercial tort of copyright infringement in Tennessee (Docket 28, p. 20).

Whether copyright infringement is a commercial tort for the purposes of Tennessee's long-arm statute appears to be an open question. Compare *Lipton,* 781 F.Supp. at 1036 (non-resident defendant that commits copyright infringement through sales by independent brokers or retail agents subject to jurisdiction under tortious act provision of New York's long-arm statute), with *Selle v. Gibb,* No. 78 C 3656, 1979 U.S. Dist. LEXIS 10623, * 12–13 (N.D.Ill. Aug.2, 1979) (cause of action against record company for copyright infringement does not arise from company's telephone solicitation of orders for infringing sound recording in Illinois). Neither party cites Sixth Circuit or Tennessee case law on this issue. Defendant cites *Ham v. La Cienega Music Co.,* 4 F.3d 413 (5th Cir.1993), as standing for the proposition that allegations of distribution and exploitation of a defendant's copyrights within the forum are not sufficient bases for a finding of jurisdiction (Docket No. 14, p. 7 n. 2). Defendant, however, misstates the holding in that case. The Fifth Circuit found that the plaintiff had "presented evidence that these efforts have borne fruit in

---

**12.** Memorandum of Law In Support of Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Improper Venue of defendant N–The Water Publishing, Inc., p. 18 (*Bridgeport Music, Inc. v. Still N–The Water Publishing,* Case 3:01–0707, Docket No. 4) ("NTW Memorandum of Law"), incorporated by reference in defendant Agarita's Memorandum in support of its motion to dismiss (Docket No. 14, p. 7).

Texas" and thus connected the defendants to Texas within the meaning of the Fifth Circuit's stream of commerce cases. *Id.* at 416. However, the Fifth Circuit upheld dismissal of the declaratory judgment action for lack of jurisdiction on the basis that the plaintiff had failed to show a sufficient nexus between the cause of action and defendants' exploitation activities: "resolution of this action depends solely upon whether [plaintiff's composition] infringed copyrights owned by [defendants]. Exploitation of the 'Boogie Chillen' copyrights by the defendants in no way relates to the merits of that question." *Id.*

The question remains, therefore, whether in the Sixth Circuit activities amounting to exploitation of an allegedly infringing copyright within the forum state are sufficient contacts by themselves to satisfy the purposeful availment requirement of the due process inquiry. This Court concludes that, without a showing of any additional conduct directed towards the state, mere generalized exploitation of a copyright in the stream of commerce does not amount to purposeful availment. To find otherwise would mean that a copyright infringement defendant would be subject to personal jurisdiction in any forum in which a copy of the allegedly infringing work was ultimately sold by others without the defendant taking any further acts directed at that forum. Such a broad rule would amount to a judicial rewriting of the Copyright Act to provide for nationwide service of process (*see Johnson v. Tuff N Rumble Management, Inc.,* Civ. No. 99–1374, 1999 WL 1201891, *3, 1999 U.S. Dist. LEXIS 19574, *10 (E.D.La. Dec. 14, 1999) (no nationwide service of process under Copyright Act)), and is contrary to the Sixth Circuit's approach to "stream of commerce" cases. *See Tobin v. Astra Pharm.*

*Products, Inc.,* 993 F.2d 528, 542–544 (6th Cir.1993) (adopting "stream of commerce plus" approach advanced by O'Connor plurality opinion in *Asahi Metal Inds. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987)); *CompuServe,* 89 F.3d at 1265 (injection of product into stream of commerce "without more, would be at best a dubious ground for jurisdiction").

For the same reasons, the Court declines to follow the decision in *Triple A Partnership,* in which the district court interpreted Kansas's long-arm statute to extend jurisdiction over two music publishing companies whose only contacts with the forum were through the licensing activities of two performance rights organizations, an out-of-state licensing agency and the sale of sheet music by an out-of-state print publisher. 629 F.Supp. at 1521. First, the court's decision in *Triple A Partnership* is heavily dependent upon language in Kansas's long-arm statute that includes acts of a defendant's "agent or instrumentality" as basis for jurisdiction. *Id.* at 1522–1523. As discussed above, this Court has already ruled that the activities of ASCAP and Skanless Records do not provide an independent basis for assertion of jurisdiction against Agarita. Second, the *Triple A Partnership* court applied the stream of commerce theory for its due process analysis, reasoning that the defendant had delivered its product (the allegedly infringing work) into the stream of commerce by entering into licensing agreements and deriving revenues from sales of the song by the licensing agency and the print publisher. *Id.* at 1524. In this Circuit, the mere act of placing goods into the stream of commerce is not a sufficient basis for jurisdiction without a showing of *additional conduct* directed at the forum that indicates purposeful availment.[13] *Tobin* at 544. Because there was

---

**13.** Moreover, there is no evidence in the record that the "good" at issue—the "Swing'n" C.D.—has been sold or is available for sale in

the state of Tennessee, other than the supposi-

no showing of additional conduct in *Triple A Partnership*, this case does not comport with Sixth Circuit law. Finally, the plaintiff in that case was a Kansas resident, and the court noted that Kansas had an interest in protecting the proprietary interests of its residents. *Id.* at 1525. No such interest can be asserted here, where plaintiffs are not residents of Tennessee, nor do they have any other significant contact with this forum.

The Court finds that plaintiffs' remaining case, *Gray v. St. Martin's Press*, also fails to support a finding by this Court of purposeful availment. 929 F.Supp. 40. *Gray* is a defamation case in which the district court in New Hampshire admitted that the "evidence of purposeful availment is not particularly strong" where the defendant author had no contacts with New Hampshire other than the contract with her publisher to distribute and sell the book nationally. *Id.* at 48. The court applied Justice O'Connor's "stream of commerce plus" theory (*Asahi Metal*, 480 U.S. at 112, 107 S.Ct. at 1032) and found that the author's contract with the publisher for national distribution of the book and her receipt of a royalty payment for each book sold provided the "additional conduct" needed and evidenced "an intent to serve every forum encompassed by the Contract, including the consumers of New Hampshire." *Id.* This Court does not find this reasoning persuasive.

In the Sixth Circuit, the additional conduct element is not satisfied by a passive agreement to receive compensation if and when goods are sold in the forum. See *State Indus.*, 200 F.R.D. at 396, where the plaintiff in a patent infringement action made a stream of commerce argument based on its allegations that the non-resident defendant had sent the allegedly infringing gas burners into the state through an established distribution channel. The

District Court ruled that the plaintiff's claim that the defendant had sold the burners with knowledge that heaters containing those burners would be sold in Tennessee was insufficient without any evidence "of purposeful action directed toward Tennessee" by the defendant. *Id.; see also Bailey v. Turbine Design*, 86 F.Supp.2d at 795 (where jurisdiction was sought based on publication of allegedly defamatory statements on corporate defendant's website, plaintiff failed to show that defendants had any contacts with Tennessee other· than website posting, or made any effort to "reach out to Tennessee residents, any more than to persons residing elsewhere"). These cases illustrate that in this Circuit, additional conduct requires a purposeful action directed at the state by the defendant in addition to placing its product in the stream of commerce. *See CompuServe*, 89 F.3d at 1264, 1265 ("There is no question that [defendant] himself took actions that created a connection with Ohio"; defendant both injected product into stream of commerce *and* entered into contract with plaintiff, an Ohio internet service provider).

This requirement of additional conduct is not met by plaintiffs' assertions regarding Agarita's "clearance process." Even if Agarita used this process to reach out to songwriters in this state (and there is *no evidence* in the record that this occurred; see Docket No. 29, ¶¶ 53–54), plaintiffs have not alleged that it was used in connection with the compositions at issue, and therefore any contacts with Tennessee as a result of this clearance process cannot support a finding of specific jurisdiction. *CompuServe*, 89 F.3d at 1267.

Having found that plaintiffs have failed to show that Agarita has purposefully availed itself of this forum, it is not necessary to determine whether plaintiff's show-

tions of Ms. Borgeson that such sales have

probably occurred.

ing fulfills the two remaining criteria for jurisdiction in this Circuit—that the cause of action arises from activities in the forum, and that a substantial connection exists between defendant's activities and the forum such that exercise of jurisdiction would be reasonable. *CompuServe,* 89 F.3d at 1263. Nor is it necessary to address defendant's arguments regarding improper venue.

For the foregoing reasons, the motion to dismiss defendant Agarita Music, Inc. for lack of personal jurisdiction is GRANTED. Defendant's motion to transfer is DENIED as moot.